EZRA W. ACER, Appellant, *v.* LEVI HOTCHKISS, Impleaded, etc., Respondent.

THOMAS BAKER et al., Appellants, *v.* LEVI HOTCHKISS, Respondent.

The doctrine of subrogation should only be applied when justice will be promoted thereby.

One who is a volunteer may not invoke its aid, as he can establish no equity; to entitle him to its benefit, he must have paid upon request or as surety, or to protect his own rights.

A party entitled to rescind a contract on the ground of fraud loses that right by bringing an action to enforce the contract after knowledge of the fraud.

In an action to foreclose a mortgage, it appeared that it was given by defendant N., to secure a portion of the purchase-money of the mortgaged premises. N. at the same time executed to plaintiffs another mortgage upon the same premises to secure the performance of certain covenants on his part forming part of the contract of purchase. In pursuance of an agreement to that effect, N. subsequently conveyed the premises, the purchasers giving their bond, secured by mortgage on the premises, for the purchase-money, and said bond and mortgage were assigned to defendant H., who gave to the purchaser his obligation by which he covenanted " to pay off and discharge " the mortgage in suit, the amount of which was deducted from the sum agreed to be paid for the assignment. H. and the purchasers were induced to enter into and

perform the contract by fraudulent representations on the part of N. that plaintiff's second mortgage had been substantially satisfied. H., with knowledge of the fraud, foreclosed his mortgage for the full amount, alleging in his complaint that he was able and willing to pay plaintiff's mortgage, and on foreclosure sale bid in the premises and entered up judgment against the mortgagors for the deficiency ; he also offered to pay plaintiff the full amount of the mortgage in suit in case the latter would assign the same, which offer was declined. H. then paid an installment, due, stating that he paid it as surety, and claimed a ⌐right of subrogation to the extent of the sum so paid. This right he set up in this action. *Held*, that the claim was untenable, and plaintiff's acceptance of the money was not an admission of such claim; that, by the contract, H. was bound, not simply as a surety, or to pay when furnished with money by payments upon the bond and mortgage assigned to him, or to carry the debt until they became due, but to pay and discharge plaintiff's bond and mortgage absolutely and independent of the assigned securities ; that he lost his right to rescind the contract by seeking to enforce it after knowledge of the fraud, and had no equities entitling him to subrogation.

Where a defendant in an action on contract sets up in his answer facts which fail as a defense, but which establish an equitable right of set-off, and such facts are proved without objection on the trial, and are found by the court, defendant is entitled to the benefit thereof, although the averments in his answer are not characterized as a counter-claim.

*Eq. L. Ass. Soc.* v. *Cuyler* (75 N. Y. 511), *Bates* v. *Rosekrans* (37 id. 412), *Muldoon* v. *Blackwell* (84 id. 646), distinguished.

(Argued October 30, 1884 ; decided November 25, 1884.)

THE appeal in the action first entitled is from a judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made the second Tuesday of June, 1882, which affirmed a judgment entered upon a decision of the court on trial at Special Term.

The appeal in the action second above entitled is from a judgment of said General Term, entered upon an order made at the time above stated, which reversed a judgment in favor of plaintiff, entered upon a decision of the trial court, and directed judgment for defendant.

The action first entitled was brought to foreclose a mortgage executed by defendant George W. Nichols, upon a farm in Darien, Genesee county given to secure a bond for $2,583.

The answer of defendant Hotchkiss, who alone defended, conceded the amount claimed to be due, but claimed that the first installment, $583, and interest on the whole sum paid by Hotchkiss to plaintiff, is still a valid lien upon said premises, and due to said Hotchkiss, and asked that the decree of foreclosure should also provide for payment thereof out of the avails of the real estate, with interest and costs.

The action second above entitled was for an alleged breach of a covenant in a bond executed by defendant, by which he covenanted to pay and discharge the bond and the mortgage, to foreclose which the first action was brought. Defendant set up as a defense substantially the facts found.

The facts found, so far as material, are as follows:

In February, 1875, Acer, the plaintiff in the first action, conveyed the premises in question to George W. Nichols, taking the bond and mortgage in suit to secure part of the purchase-money. He also agreed to receive in exchange other real estate, and took of Nichols his bond secured by mortgage on the same premises, covered by the first mortgage, the condition of the bond being that Nichols should convey certain lots to Acer within one year, do certain things in completing the buildings, and pay off certain mortgages on lots conveyed on said property, and hold plaintiff harmless therefrom, and in case he failed to do so, he was to be liable to plaintiff for the sum of $6,390.

Nichols soon after executed to defendant Hotchkiss two mortgages on the farm, one of $1,000 and one of $1,500.

In April, 1875, Nichols made a contract with defendants, Baker and Wooster, to sell and convey the farm to them, who as a part of the purchase-money gave him their bond and a mortgage on said farm for $7,500. Nichols agreed to get Hotchkiss to discharge his two mortgages, and to give the purchasers his bonds conditioned to pay the $2,583 bond and mortgage. This Hotchkiss agreed to do as part of the consideration of the assignment to him of the $7,500 bond and mortgage. Hotchkiss thereupon made and executed his bond to Baker and Wooster, conditioned as follows: (After reciting the Acer mortgage and the amount) "which said Hotchkiss hereby covenants and agrees to pay off

and discharge as the same becomes due, both principal and interest." The bond Nichols delivered to Baker and Wooster, with a deed of the premises; received their bond and mortgage of $7,500, which he assigned to Hotchkiss, who delivered to Nichols discharges of the mortgages held by him, the amount of which and of the $2,583 bond and mortgage were deducted from the $7,500, and Hotchkiss, on receipt of the assignment, paid to Nichols the residue. Hotchkiss was induced to take the assignment, and Baker and Wooster to make the purchase, by false and fraudulent representations on the part of Nichols to the effect that the conditions in the $6,390 bond had been mainly performed, also that other security which he gave to said purchasers to indemnify them against such bond was ample. Hotchkiss, with the knowledge of the fraud, foreclosed his mortgage, bid in the premises on foreclosure sale, and obtained judgment for a deficiency against the mortgagors and against Nichols, who in his assignment had guaranteed payment thereof.

When the first installment upon the bond and mortgage in suit became due, Hotchkiss offered to pay plaintiff the full amount of the bond, in case he would assign to him the bond and mortgage; this plaintiff refused to do, and commenced a foreclosure suit; Hotchkiss thereupon paid the amount due and costs, notifying plaintiff that he paid it as surety and that he claimed the right to be subrogated to that amount of the mortgage security. Further facts appear in the opinion.

*H. H. Woodward* for appellants. It was error to hold that Hotchkiss, by giving his bond to pay the $2,583 bond and mortgage of Acer, became or acted as surety, and as such, had the right of subrogation to the Acer mortgage. (*Gridley* v. *Gridley*, 24 N. Y. 130; *Calvo* v. *Davis*, 73 id. 211; *Palmer* v. *Purdy*, 83 id. 147; *Millerd* v. *Thorn*, 56 id. 402; *Colgrove* v. *Tallman*, 67 id. 95; *Garnsey* v. *Rogers*, 47 id. 239; *Murray* v. *Hand*, 3 Johns. Ch. 569; *Sanger* v. *Wood*, id. 416.) Acer could enforce, as against Hotchkiss, the agreement to pay his mortgage, as Hotchkiss had made himself the

principal debtor. (*Thorp* v. *Keokuk Coal Co.*, 48 N. Y. 253; *Dingledien* v. *Third Ave. R. R. Co.*, 37 id. 575; *Calvo* v. *Davis*, 8 Hun, 222; 75 N. Y. 216; *Lawrence* v. *Fox*, 20 id. 268; *Burr* v. *Beers*, 24 id. 179; *Paine* v. *Jones*, 14 Hun, 579; affirmed, 76 N. Y. 274; *Richard* v. *Sanderson*, 41 id. 79; *Cambell* v. *Smith*, 71 id. 28; *Hand* v. *Kennedy*, 83 id. 149; *Hutchings* v. *Miner*, 46 id. 456; *Vrooman* v. *Turner*, 69 id. 280–284; *Willard* v. *Thorn*, 56 id. 402; *Colgrove* v. *Tallman*, 67 id. 95.) Acer has been guilty of no fraud, and should not be put in a worse position by the fraud of others where he is not a party to it. (Hilliard on Mortgages [2d ed.], 313, § 35; *Copis* v. *Middleton*, 1 Turn. & R. 231; *Hodgson* v. *Shaw*, 3 McK. & K. 195; *Williams* v. *Owens*, 13 Sim. 597; *Twombly* v. *Cassidy*, 82 N. Y. 155; *Sandford* v. *McLean*, 3 Paige, 117, 122.) As Hotchkiss had made himself the principal debtor, the bond and mortgage of Acer's became the debt of Hotchkiss, and he could discharge his obligation to Nichols and Baker and Wooster in no other way but by paying it. (*Roe* v. *Baker*, 82 N. Y. 435; *Cooley* v. *Howe Machine Co.*, 53 id. 620.) The fraud of Nichols in inducing Hotchkiss to enter into this arrangement does not in any way affect the rights of the parties. (*Kennedy* v. *Thorp*, 51 N. Y. 174; *Arnold* v. *Nichols*, 64 id. 117; *Cobb* v. *Hatfield*, 46 id. 533; *Arnold* v. *Lyman*, 17 Mass. 400; *Putnam* v. *Field*, 103 id. 556; *Ætna Bk.* v. *Fourth Nat. Bk.*, 46 N. Y. 82; 28 Ind. 44; 38 Mich. 55.) Nichols had covenanted with Baker and Wooster to clear the land of the lien of this mortgage. Nichols had, therefore, no equity that would permit him to enforce it against the land. Hotchkiss, his assignee, could not have a better right to enforce it against the land than Nichols had, as whatever rights or equities he had, he acquired from Nichols by the assignment of the $7,500 mortgage. (*Green* v. *Warnick*, 64 N. Y. 220; 53 How. Pr. 317; 58 id. 207.) The action of foreclosure brought by Hotchkiss, if it has any bearing on this case, is *res adjudicata* against the defendant Hotchkiss, in this action. (*Verplanck* v. *Van Buren*, 76 N. Y. 247, 257; *Smith* v. *Smith*, 79 id. 634.) This action was properly brought.

There was a breach of the bond which the plaintiffs held, and they were damnified. The measure of damages was the amount due and unpaid upon the Acer bond and mortgage, and interest which the defendant had bound himself to pay on the first day of March, 1877. (*Rector of Trinity Church* v. *Higgins*, 48 N. Y. 532 ; *Kohler* v. *Mattage*, 72 id. 259.) The answer sets forth no defense to the action. It alleges no counter-claim and pleads no set-off, and the facts proved and found by the learned justice neither constitute a counter-claim nor any defense to this action. (*Palmer* v. *Purdy*, 83 N. Y. 147 ; *Colgrove* v. *Tallman*, 67 id. 95.) The defendant Hotchkiss, by giving his bond, as he did, became the principal debtor for the Acer mortgage. (*Campbell* v. *Smith*, 71 N. Y. 28 ; *Comstock* v. *Drohan*, id. 9 ; *Paine* v. *Jones*, 14 Hun, 579 ; affirmed, 76 N. Y. 274 ; *Lawrence* v. *Fox*, 20 id. 268 ; *Burr* v. *Beers*, 24 id. 178 ; *Thorp* v. *Keokuk Coal Co.*, 48 id. 253 ; *Dingeldein* v. *Third Ave. R. R. Co.*, 37 id. 575, 577 ; *Rector of Trinity Church* v. *Higgins*, 48 id. 532 ; *Thomas* v. *Allen*, 1 Hill, 145 ; *Churchill* v. *Hunt*, 3 Denio, 321 ; *Pardee* v. *Treat*, 82 N. Y. 385 ; *Palmer* v. *Purdy*, 83 id. 147.) The fraud of Nichols is no defense, for the defendant is estopped from setting it up by foreclosing his mortgage, and taking all the benefits he was entitled to under it. (*Kennedy* v. *Thorp*, 51 N. Y. 174 ; *Arnold* v. *Nichols*, 64 id. 117 ; *Cobb* v. *Hatfield*, 46 id. 533.)

*Angus McDonald* for respondent. The parties to these two actions were each and all parties to the action of foreclosure brought by Hotchkiss, and all having appeared, answered and defended therein, and all these actions having arisen out of the same transaction, not only the decree therein, but also all findings of facts therein litigated, are final and conclusive against all parties to these actions. (*Krekeler* v. *Ritter*, 62 N. Y. 373 ; 71 id. 601 ; 88 id. 654.) Any facts can be set up as a defense existing before answer. (Code, § 500 ; *Lyons* v. *Brooks*, 2 Edw. Ch. 110 ; *Beals* v. *Cameron*, 3 How. Pr. 414.) If the facts pleaded and proven constitute a good defense by way of counter-

claim only, it would be available as a defense in this action. (*Eq. L. Ass. Soc.* v. *Cuyler*, 75 N. Y. 511; *Isham* v. *Davison*, 52 id. 237; *Muldoon* v. *Blackwell*, 84 id. 646; *Bates* v. *Rosekrans*, 37 id. 412; Code, §§ 509, 1207; *Watson* v. *People*, 87 N. Y. 561; *Van Brunt* v. *Day*, 81 id. 254; *Springer* v. *Dwyer*, 50 id. 22; 92 id. 217.) There was no breach of contract. (*Rogers* v. *Smith*, 47 N. Y. 327.) There could be no damages, either present or prospective. (*Baker* v. *Drake*, 53 N. Y. 211.) By executing this bond defendant did not become the principal debtor, as between plaintiffs and defendant. (47 N. Y. 234; 82 id. 285; 69 id. 280; 85 id. 30.) The plaintiffs were not trustees of Acer. (*Garnsey* v. *Rogers*, 47 N. Y. 234.) If there were any recovery to be had on or relief from the bond of defendant (in suit), it should have been sought in the action for foreclosure; it cannot be made a cause of action in a separate action between persons who are parties to that action. (*Scofield* v. *Descher*, 72 N. Y. 491.) It having been found in the foreclosure suit brought by Hotchkiss, that he paid the first installment of the $2,583 mortgage as surety for the mortgagor Nichols, and plaintiff having been a party defendant to that action, the question is *res adjudicata.* (*Collins* v. *Bennett*, 46 N. Y. 490; *Gates* v. *Preston*, 41 id. 113; *Smith* v. *Hemstreet*, 54 id. 644; *Stowell* v. *Chamberlain*, 60 id. 272.) Defendant could not be liable to Acer by his bond to pay this mortgage, because it was only the promise of a subsequent mortgagee to pay a prior mortgage. (*Garnsey* v. *Rogers*, 47 N. Y. 234; *Hardy* v. *Treat*, 82 id. 385.) As Baker and Wooster are not liable personally to pay, the defendant was not. (*Vrooman* v. *Turner*, 69 N. Y. 280; *Dunning* v. *Leavitt*, 85 id. 30.) Nichols, the mortgagor, was the principal debtor, and respondent being thus by his bond compelled to pay, he paid as surety for Nichols, and as such was entitled to be subrogated to all the right of Acer, *pro tanto*. (*Barnes* v. *Cannack*, 1 Barb. 392; *Thornebly* v. *Cassidy*, 82 N. Y. 155.) On such payment Hotchkiss became subrogated to all the rights of the plaintiff as to that amount of the mortgage thus paid over to plaintiff. (*Ellsworth* v. *Lockwood*, 42 N. Y.

89, 98; *Lewis* v. *Palmer*, 28 id. 271; *Barnes* v. *Mott*, 16 Abb. Pr. [N. S.] 57; *Moore* v. *Moore*, 21 How. Pr. 211.) By virtue of such right of subrogation the defendant had a right to foreclose such mortgage if the plaintiff had refused, making plaintiff a party defendant; hence, as defendant, he has a right to have his claim included in the decree. (*Norton* v. *Warren*, 3 Edw. Ch. 106; *Simpson* v. *Satterlee*, 64 N. Y. 657; *Burlingame* v. *Traders' Bk.*, 12 Hun, 149.) In order to be subrogated it is not necessary for defendant to pay the $6,390 security mortgage. (42 N. Y. 89; Hilliard on Mort. [4th ed.] 329, §§ 31-32, 338, 339; 5 N. Y. Week. Dig. 218; *Hodgson* v. *Shaw*, 3 M. & K. 185; 47 N. Y. 233; 10 N. Y. Week. Dig. 57.) The plaintiff, Acer, is in no position to oppose the right of subrogation as claimed by Hotchkiss and established by the judgment under review. (47 N. Y. 233; *Burlingame* v. *Traders' Bk.*, 12 Hun, 149.) Hotchkiss paid to protect Baker and Wooster, and as surety for Nichols; hence his right of subrogation. (42 N. Y. 89.)

The opinion in the action first entitled is as follows:

FINCH, J. The doctrine of subrogation is a device to promote justice. We shall never handle it unwisely if that purpose controls the effort, and the resultant equity is steadily kept in view. It might be easy to use it for the benefit of the respondent if the plaintiff in the foreclosure stood merely as the owner of the first mortgage with abundant security for the whole mortgage debt. But he owns a second and larger mortgage upon the same property, and whether on a foreclosure the land would sell for the full amount of both to a third person paying the money is not at all certain. Situated thus, any payment upon the first mortgage increases Acer's security upon the second; and to that benefit he has the right if the payment was in truth such, and not in equity tantamount to a purchase of so much of the mortgage debt. Subrogation awarded to Hotchkiss therefore affects Acer, and it ceases to be material that the other interested parties made default, and

are not here resisting. Acer's two mortgages were practically one, since they were given by the same man, at the same time, as part of one transaction, and together represent the unpaid purchase-money of the very land to which Hotchkiss has now acquired title. The latter took his mortgage and under it the land, subject to both mortgages of Acer. Subrogation can do Hotchkiss no good except at the expense of Acer by cutting off part of the purchase-price due to him. For, if the land sells for more than the two mortgages as they stand reduced by payments, the surplus belongs to Hotchkiss, and is larger by the amount of his payment which he gets back in the surplus. But, if it sells for less, subrogation hurts Acer, and deprives him of a part of the purchase-money which otherwise he would have secured. He has a right, therefore, to resist, and an interest in resisting the claim of Hotchkiss to be subrogated, and may justly drive him to establish the equity which must lessen plaintiff's security if Hotchkiss is to gain a benefit at all.

One who is only a volunteer cannot invoke the aid of subrogation, for such a person can establish no equity. (*Gans* v. *Thieme*, 93 N. Y. 232.) He must have paid upon request, or as surety, or under some compulsion made necessary by the adequate protection of his own rights. Hotchkiss was bound to put himself in this attitude before the court by some sufficient proof, and recognizing the necessity, he undertook to do so. One effort in that direction asserted this : that Hotchkiss made his payment in the character expressed of a surety for Nichols, and Acer accepted the payment in that character and upon that condition, and cannot now deny it. But the proof on this subject was contradictory, and the facts found do not warrant such inference. Those facts are that Hotchkiss offered to pay the mortgage in full if Acer would assign it. The latter refused. Hotchkiss then paid the amount due and told Acer " he paid it as surety and expected him to hold that portion of the mortgage for him, Hotchkiss." This finding furnishes no element of admission or estoppel. Acer plainly denied the asserted right of Hotchkiss to take and enforce the mortgage for his own benefit, and in the face of that denial

Hotchkiss made his payment, averring that a certain legal effect would characterize and flow from it. Acer's acceptance of the money was not an admission of that legal result. He received it as payment merely, leaving Hotchkiss to secure, if he could, any right founded upon such payment. Putting that alleged admission one side as ineffectual, it still remained for Hotchkiss to show the facts which made him a mere surety, or the compulsion which drove him to the payment. He could show that only by force of his dealing with Nichols and with Wooster and Baker. Out of that dealing he became a junior incumbrancer, and obligated to pay the Acer mortgage, and in the end owner of the equity in the Darien farm. His equitable right of subrogation grew out of that contract and is based upon it, or else he stands as a mere volunteer. Now by the terms of the contract which alone made him junior incumbrancer, and involved a request to pay, and so left him not a mere volunteer, by those terms he was bound, not only to pay, but to *discharge* the Acer mortgage and remove entirely its lien from the Darien farm. Baker and Wooster expressly stipulated for this. They took their deed from Nichols upon that distinct condition. They were entitled to have all incumbrances removed, and were carefully providing for their removal, and gave their mortgage for $7,500 to be assigned by Nichols to Hotchkiss, only upon the faith of the latter's express covenant to pay and discharge the Acer mortgage. A purchase of it by Hotchkiss, or a payment of it by him which saved its vitality, left their land doubly incumbered for the same debt. Nichols assigned the $7,500 mortgage to Hotchkiss for a similar purpose and in the like confidence. He was liable to Acer upon his bond, and when he sold the Baker and Wooster mortgage to Hotchkiss, he allowed the latter to deduct from its purchase-price the Acer mortgage as assumed by him. Unless that mortgage and bond were not only paid, but the debt itself extinguished, Nichols was made to give Hotchkiss the means of payment, and yet be obliged to pay himself. It is beyond reasonable question that all the parties to the contract understood, and

the contract itself required, that Hotchkiss should discharge the mortgage and extinguish it as a lien on the land for the protection of the grantees, and as a personal debt for the protection of the grantor. He so covenanted in express terms. He did it for a valuable consideration. His covenant was part of the purchase-price of the mortgage that he bought. He retains that consideration yet. He has foreclosed the mortgage, bid in the land, and taken judgment for a deficiency. He stands before us enforcing the consideration and demanding its entire amount. He makes no offer to surrender any part of it, or to abate any portion of his claim upon it. But while clinging to his consideration, he now seeks to avoid his covenant, because the consideration is of less value than he anticipated, and that through the agency of an equitable doctrine devised to promote justice. When he foreclosed his mortgage he did so for the full amount, saying in his complaint that he was both able and willing to pay the Acer mortgage. So that the contract which he invokes to put himself in the position of a surety or junior incumbrancer, or a person paying under stress of imperiled rights, so as to be entitled to subrogation, itself shows that he contracted not to be subrogated, but to discharge and extinguish the debt and the lien which he now seeks to keep alive and enforce. There is no equity in helping a man to break his contract while he persistently keeps its consideration.

The view of the General Term was pressed upon us at the argument; that Hotchkiss merely agreed to "carry" the Acer debt until he was reimbursed by the $7,500 mortgage. That assumes that by his contract he was not, as he covenanted, to "pay and discharge" the Acer mortgage, but was to buy it and then "carry" it until reimbursement. There is nothing of the kind in the terms of the contract, or the intention of the parties. The idea implies that the Acer mortgage was to be paid by Hotchkiss only when Baker and Wooster furnished him the money by paying their own. In other words it makes the covenants dependent one upon the other, and assumes that Hotchkiss could not be liable upon his bond to Baker and

Wooster, except upon condition that the latter paid their own. No such condition in any manner existed. Undoubtedly Hotchkiss expected to be re-imbursed. He took the $7,500 mortgage in part to secure that result, but his rights to that reimbursement flowed from his covenant to "pay and discharge" the Acer mortgage, which covenant was absolute, to be first performed, and independent.

That the $7,500 mortgage has proved worthless or nearly so does not help the case. That result flowed from the alleged fraud and falsehood of Nichols, who represented that the conditions of Acer's second mortgage had been already and would be in the future so fulfilled as to extinguish that lien. But Hotchkiss might have rescinded on the ground of fraud. He might have freed himself from his obligation and revived his own mortgages, but to do that would have been compelled to return the $7,500 mortgage to Nichols, restoring what he had received. Instead, he chose to stand upon his contract, and affirm it by enforcing it, and if the result is disastrous, it furnishes no reason for allowing him to re-trace his steps. One cannot experiment upon a contract void for fraud, by trying to enforce it with knowledge of the fraud, and that result being unsatisfactory, seeking at last to rescind it. That is the substance of Hotchkiss' present position. If he is subrogated he rescinds his own contract after having with full knowledge sued to enforce its consideration, while retaining that consideration and declining to restore the other parties to their original situation.

We have taken no notice of the debate over the question whether at any stage of the transaction Acer could have maintained an action against Hotchkiss upon his promise to pay the mortgage. Conceding that such liability never accrued affects in no respect the view we take of the case; for Acer is not here suing upon that promise. He insists, that even if not liable to him, Hotchkiss voluntarily paid, and that he has a right to hold the benefit of that payment until Hotchkiss can establish some equity strong enough to deprive him of it. By making this payment, Hotchkiss stopped Acer's foreclosure, and induced the discontinuance of the action. He could not have

mistaken or misunderstood Acer's position ; and when in seeking to show his equity to be subrogated, he puts before us all the facts which demonstrate that such equity consists in permission to violate his covenant while retaining its consideration, he establishes against himself our duty to refuse.

Our view of the case is strengthened rather than weakened by two other facts which entered into the contract. On his assignment of the $7,500 mortgage to Hotchkiss, Nichols guaranteed its payment, and gave another mortgage on other property as a guard against Acer's second mortgage. That collateral has been enforced and its proceeds applied to the reduction of such second mortgage, and Nichols remains liable under his guaranty for more than the full amount of the $7,500 mortgage, and since he has never in any manner been released, subrogation would leave him twice liable for the same debt unless equity interfered by compelling as against Hotchkiss a reduction of the $7,500 mortgage ; but if that were done it would simply work a partial rescission of the contract of Hotchkiss in the face of his positive and persistent affirmance of it.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.

The opinion in the action second above entitled is as follows:

FINCH, J.   The matters stated in the answer did not constitute a defense.   The General Term gave them that force and effect upon grounds against which we have decided in the foreclosure suit brought by Acer.   We there held that the covenant of Hotchkiss was to pay and discharge the Acer mortgage, and not merely to carry the debt till the Baker and Wooster mortgage became due.   We further held that the covenant of Hotchkiss was independent, and payment of their mortgage by Baker and Wooster was not a condition precedent to their right of action upon such covenant.   Granting the assertion of the General Term that the two bonds were cotemporaneous and to be read together as if contained in one paper, it would still

be the case of mutual covenants in which by the terms of the contract performance by Hotchkiss was to be upon days certain which preceded the conditions to be performed by Baker and Wooster. The covenant by the defendant comes within the first branch of the rule originally stated in *Pordage* v. *Cole* (1 Saunders, 320, note 4) that "if a day be appointed for the performance of an act, and such day is to happen or may happen before the performance of the act, which is the consideration for the first-mentioned act, then the covenants are considered mutual and independent, an action may be brought without averring performance of the consideration, for it appears that the party relied upon his remedy and did not intend to make the performance a condition precedent." (*Tompkins* v. *Elliot*, 5 Wend. 497.) The payment by Hotchkiss of Acer's mortgage was stipulated to be made as and when it became due, and such date, preceded the maturity of the $7,500 mortgage. (*Northrup* v. *Northrup*, 6 Cow. 296.) Hotchkiss himself foreclosed that mortgage without averring or proving performance of his covenant, and when in fact it was unperformed.

But the defendant now insists that he proved a counter-claim; and although he did not plead it as such, calling it by that name, yet as he did set out the facts and they were all established and found in his favor by the court, he argues that he is entitled to the benefit of them, at least so far as to discharge the plaintiffs' claim upon the bond. There is an obvious justice in the result thus sought to be accomplished. The damages of the plaintiffs might well be applied, if possible, upon the defendant's unpaid bond and mortgage, for it would then result in just such a reduction of that security as would have been made if no covenant of Hotchkiss had existed to pay the Acer mortgage. But the question is one of pleading. We have held that the counter-claim must be described as such where the question turned upon the want of a reply. (*Eq. Life Ass. Soc.* v. *Cuyler*, 75 N. Y. 511.) Such a rule is essential to protect a plaintiff from being misled by an answer, and to prevent the snare of a counter-claim lurking under the cover of a sup-

posed defense, and unconsciously admitted by a failure to re-
ply.   We have also held that where the pleader himself char-
acterized his facts alleged as a " defense " he was bound by the
choice which he deliberately made.   (*Bates* v. *Rosekrans*, 37
N. Y. 412.)   We have also ruled that the counter-claim could
not be asserted for the first time on appeal.   (*Muldoon* v.
*Blackwell*, 84 N. Y. 646.)   But that again was an attempt to
get the benefit of a failure to reply.   In this case, however,
the pleader has set out the facts without at all characterizing
their effect.   He left the way open to use them either as a de-
fense or counter-claim.   He put no reliance upon the omission
to reply, but practically waived the need of such a pleading,
and proved his facts as if they had been put in issue by a de-
nial.   He relied upon them at the trial as sufficient to defeat
the action and asserted their effect, and in his exceptions to the
conclusions of law of the trial court he raised the question by
insisting " that the facts proven on said trial did constitute
and should have been adjudged a full counter-claim or defense."
The proceedings on the trial are not in the return and we have
no warrant for saying that this exception was the first effort to
raise the question.   Now the facts pleaded and proved and
found constituted, if nothing more, at least an equitable set-off.
At the date of the commencement of the action, the defendant
owed the plaintiff $1,140 and some interest thereon, and the
plaintiffs owed the defendant at least three payments of
semi-annual interest, amounting to $787.50.   Before the
conclusion of the trial it was shown that the mortgage col-
lateral to this debt had been foreclosed, and $1,050 and some
interest found due, and on a sale but $200 had been realized,
leaving a deficiency due from the plaintiffs of $1,113.27 with
the whole $7,500 also remaining to become due.   This evidence
was given without objection.   Now " the general rule is that
equity requires cross-demands to be set off against each other, if,
from the nature of the claim or the situation of the parties, jus-
tice cannot otherwise be done."   (*Coffin* v. *McLean*, 80 N. Y.
564; *Smith* v. *Felton*, 43 id. 419.)   Here there were, even
at the commencement of the action, such cross-demands.   We

dismiss the suggestion that the plaintiffs held their claim as trustees of an express trust for Acer, because no such trust was contemplated or constituted, and it is probable that neither of the present parties were ever liable to Acer at all. There were cross demands held by each party in his and in their own right, due and payable at the commencement of the action. Nichols, who had guaranteed the $7,500 bond and mortgage, was insolvent. That the plaintiffs were insolvent was alleged in the answer and is conceded in their counsel's brief ; and that a part of this $7,500 bond and mortgage was intended to reimburse Hotchkiss for the assumption of the Acer mortgage is beyond dispute. Equity will readily lay hold of facts like these to establish an offset, and so reach substantial justice. Undoubtedly such equitable offset is now embraced in the definition of a counter-claim (Code Civ. Pro., § 501) and the question returns, whether the facts pleaded were thus available to the defendant without being expressly described as a counter-claim. In *Van Brunt* v. *Day* (81 N. Y. 254) the defendant pleaded facts " available to the defendant as a counter-claim to the extent of the damages sustained, in reduction or extinguishment of his liability." No reliance was put upon the absence of a reply if one was absent, but the defendant offered to prove his independent right of action. Objection was made, but not upon the ground of any defect in the pleadings. Because that evidence was rejected, this court reversed the judgment and ordered a new trial. In this case the evidence of the cross-demand came in without objection of any kind ; the question was raised on the trial and nobody appears to have been misled. While at the commencement of the action the set-off due and matured did not equal the plaintiff's claim, yet at the time of the trial, and before the answer was served, the amount due had been judicially ascertained as $1,050, and interest, and before the judgment was reached, the plaintiffs' deficiency, with which they were chargeable, had become $1,113.72 ; a deficiency further increased before the final judgment was ordered to more than enough to extinguish plaintiffs' claim. That some portion of the offset

Statement of case.

accrued during the pendency of the action is true, but no objection was taken upon that ground, and no rights of third parties had intervened. (*Gay* v. *Gay*, 10 Paige, 369.) If such objection had been made the defendant might have obtained leave to serve a supplemental answer setting up the maturing of the additional sums after the commencement of the action. (Code of Civ. Pro., § 544.) The General Term was, therefore, justified in reversing the judgment of the Special Term and ordering judgment for the defendant, but for the reason that the debt due to the plaintiffs upon defendant's bond is extinguished by the offset of an equal amount due from the plaintiffs to the defendant upon their bond, and the judgment in the foreclosure suit in favor of Hotchkiss is to that extent paid and extinguished.

The judgment of the General Term should be affirmed, with costs.

All concur.

Judgment affirmed.