## THE HATTIE M. SPRAKER.[1]

### STEBBINS v. THE HATTIE M. SPRAKER, etc.

*(District Court, S. D. New York. December 27, 1886.)*

1. COLLISION—EAST RIVER NAVIGATION—TWO TUGS—TUG AND PIER—STATE STATUTES—FAILURE TO KEEP IN MID RIVER—OVERTAKING BOAT—CLOSE APPROACH TO OTHER STEAM-VESSEL—SHEER—CROWDING.

   The tug S., going up the East river with a car-float in tow along-side, sheered to within 100 feet of the New York piers, preparatory to rounding to on the Brookly shore against the tide. The tug N., which was also coming up river nearer the New York shore, had followed the sheer of the S. towards New York, and, when close to the latter shore, found herself in a pocket, between the S. and the piers; and, being unable to back, for fear of being thrown against the piers, went ahead full speed, and ran into the end of Pier 42, whereby both the tug herself and the tow were damaged. *Held,* that the N. was in fault for violating the state statute, which required her to go as near mid river as may be: and also the statute which forbids a steam-vessel under way from approaching and passing another nearer than 20 yards. *Held, further,* that the S. was in fault for unjustifiably sheering, and crowding the N., without even a warning whistle. The damages were therefore divided.

2. EVIDENCE—SETTLEMENT OF CLAIM—SUBROGATION.

   The settlement by a tug of her tow's claim for damages is evidence of fault on her part, in a subsequent suit by her against another vessel. Without fault or liability, there would be no subrogation on payment of the tow's demand. Being held liable, as in fault, she is entitled to recover half of the tow's damages.

In Admiralty.

*A. B. Stewart,* for libelant.

*Carpenter & Mosher,* for claimants.

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

BROWN, J. On the twenty-third October, 1885, the steam-tug Hattie M. Spraker, with a car-float about 200 feet long, lashed on her port side, was going up the East river, with a strong flood-tide, bound for Adams street, Brooklyn. She had passed under the Brooklyn bridge about one-third of the distance across from the New York shore, and, as she did so, sheered towards the New York shore, until at about Pier 36, she had run up to within 100 feet of the piers, when she put her helm hard a-port, for the purpose of rounding to on the opposite side of the river, against the tide. The libelant's tug, the D. K. Neal, had taken a canal-boat along-side at Pier 6, for the purpose of towing her to Newtown creek, and came up river at the same time as the Spraker, but a little nearer the New York shore. She had followed the Spraker's sheer to the west-ward, and, when abreast of Pier 38, partly lapping the Spraker, and within some four feet of her, and being also very near the New York piers, she found herself unable to back, lest she might be thrown against the piers with the strong set of the tide; and, in attempting to go ahead full speed, while the Spraker was rounding, ran against the end of Pier 42, which projected further into the river than the piers below it, and by the force of the blow parted the lines which held the tow, in conse-quence of which the latter drifted ahead, and was damaged, as well as the tug. The owner of the tug subsequently settled with the tow for her damages, taking a receipt in full, and claims to recover for both against the Spraker.

The evidence presents an entire contradiction between the witnesses of the two tugs as to whether, below the Brooklyn bridge, the Neal, or the Spraker, was astern, and was the overtaking boat. The circumstance, however, that the Spraker slowed shortly before reaching the Brooklyn bridge, which the pleadings as well as the witnesses assert, and the testi-mony of the claimants' witnesses that the slowing was caused by a Brook-lyn ferry-boat passing ahead of the Spraker towards the New York slip, in the absence of any other explanation of her slowing, satisfies me that the claimants' contention in this respect is correct, and that the Spraker had before that been ahead, and that the Neal came up so as just about to reach the Spraker's stern while the Spraker was slowing; and that the Neal's witnesses did not remember anything about the ferry-boat, because she did not interfere with the Neal, which was further astern, and the circumstance would therefore not be recollected by the Neal's witnesses.

Upon this finding of facts, it is impossible for me to hold the Neal without fault. She was bound for Newtown creek. The state statute required her to go as near the middle of the river as may be. There was nothing to prevent her doing so. Instead of that, she continued from Pier 8 up nearly to the Brooklyn bridge, as her witnesses say, only about 200 feet from the New York shore, and, as I find, probably not exceeding 400 feet, at most; and when the Spraker sheered towards the New York shore, instead of moving towards the center of the river, as she might and should have done, she kept upon the inside of the Spraker, and gradually overhauled her, but very slowly, until she was in a pocket,

whence she could not escape. Her going near the piers and violating the statute led directly to the accident, and she must therefore be held in fault. She was further in fault, also, for violating the state statute which prohibits a steam-vessel under way approaching and passing another nearer than 20 yards. There were no special circumstances to render this statute inapplicable. When the Spraker's continued sheer brought the Neal first within that limit, there was still time and room for the Neal to stop and obey the statute.

The settlement by the Neal, moreover, of the tow's claim for damages, is a strong practical admission of her own fault. The libel alleges an assignment and subrogation of the tow's claim, but no assignment is proved. The evidence does not show a purchase of the claim, but simply a settlement, with a receipt in full for all claims of damages. There can be no subrogation in favor of a mere volunteer; but only in favor of one who pays under some legal liability, and there could be no liability of the Neal unless there was fault. *The U. S. Grant,* 7 Ben. 337; *Acer v. Hotchkiss,* 97 N. Y. 395.

The fault of the Neal does not, however, excuse the Spraker from her own clear faults. From the time the two passed under the Brooklyn bridge, the Neal was somewhat lapping the starboard quarter of the Spraker, and gradually gaining upon the latter. The Neal was in the the situation of an overtaking and passing vessel; and, while the Spraker was entitled to keep her course, she was prohibited from crowding. She continued her sheer without any attention to the Neal, so as to come unjustifiably and unnecessarily near the New York shore. The Neal could not have anticipated such a continuance of this sheer. I am entirely satisfied that the Spraker could have rounded to perfectly well, without occupying practically the whole of the river to make her turn. It is quite possible, as suggested by libelant's counsel, that the Spraker went nearer to the piers than she intended to, in consequence of the strong set of the flood-tide towards the New York shore. She is answerable for any such miscalculation. It is not admissible that a vessel may swing in this way across the river, without paying any attention to other boats on her quarter; and, had she intended to go so near to the New York piers as to make it dangerous to other boats inside and abreast of her, it was at least her duty to give some signal of danger to other vessels thus put unexpectedly in jeopardy. No signals were given by either vessel, and no steps were taken by either to avoid danger until too late. Both were in fault, and the libelant is therefore entitled to half the damages to the Neal and her tow, and a reference may be taken to compute the amount.