[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 432 
The judgment cannot be sustained upon the ground or for the reasons assigned by the referee. His legal conclusions are clearly erroneous. There is no ambiguity in the description of the premises conveyed to the defendant. The boundaries of the lands granted by the plaintiff to Margery Hoppough, and excepted from the grant to the defendant, are well defined; and that deed, by the reference to it in the deed to the defendant, is as if incorporated in that deed, and makes a part of it. (Jackson v.Parkhurst, 4 Wend., 369; French v. Carhart, 1 Comst., 96.) The point at which the survey of the excepted land commenced was fixed and certain; the courses and distances were given with precision, and were capable of being traced and followed; and there was no prominent monument or boundary by which the corners and distances of the survey could be controlled, or by which, if erroneous, they could be corrected. The permanent bounds and lines were entirely consistent with the courses and distances *Page 434 
given in the deed to Mrs. Hoppough. The lake would be reached by the second line of the survey; and the third line was to the old channel of the stream referred to, as well by the erroneous description of the distances as by a survey corrected in accordance with the claim of the defendant. The effect of the deed could not, therefore, be varied by interpretation, or by construing its terms. It could only be done by extrinsic evidence showing a mistake in the description, and making a case entitling the defendant to a reformation of the deed. No knowledge of the surrounding circumstances or the situation of the parties could enable the court so to apply the terms and descriptions of the deeds to the lines claimed by the defendant as constituting the boundary of the excepted lands. The deed did not, upon any construction of its language, convey to the plaintiff the premises for which this action was brought, and it was error for the referee to hold that it did. It was, however, upon the evidence, if the referee had found the mistake, a proper case for reforming the deed, so as to include within the grant to the defendant a greater portion of that which was included within the boundaries of the grant to Mrs. Hoppough, as described by courses and distances, and so excepted from the grant to the defendant. That was the relief granted in Johnson v. Taber (6 Seld., 319), referred to by the referee in support of his judgment. But a reformation of the deed was not necessary to the defence of the action. The same state of facts which would entitle the defendant to a reformation of the deed would establish his equitable right to the possession, and would as effectually defeat the action as would the legal title. (Code, § 150; Crary v. Goodwin, 2 Kern., 266.) The legal title of the demanded premises was in the plaintiff, but the defendant, it may be assumed, made an equitable defence to the claim for the larger portion of them, and was entitled to a judgment to that effect, upon proper findings by the referee. The referee also erred in his second conclusion of law, that the plaintiff was estopped, by his covenant of warranty, from asserting a title to the premises mentioned *Page 435 
in the complaint. The covenant was only co-extensive with the grant, and could only operate as an estoppel, or be effectual for any purpose in respect to lands included within the grant. The defendant would have been entitled, as the grantee of the plaintiff as against Mrs. Hoppough, to demand a reformation of her deed, with that to himself, so as to give to him the legal title to all the lands which he bought, and which, by mistake, had been included within the description of those deeded to Mrs. Hoppough. It certainly was his right, irrespective of any covenant of warranty, when the plaintiff became the owner of the lands deeded to Mrs. Hoppough. His right did not depend upon the covenant in his deed; and that covenant did not estop the plaintiff from asserting title to lands not included within the terms and boundaries of the grant.
The last conclusion of law by the referee is based upon and the natural sequence of the first two, but upon the facts found it is erroneous. He finds and decides as matter of law that the plaintiff is not entitled to the possession of any lands now in the possession of the defendant. He was in possession of the land on the east of and up to the fence extending from the highway to the lake, and which the referee regards the dividing line between the parties, and this embraced some portion of the land flowed by the waters of the mill-pond of the plaintiff at high-water mark, which were clearly excepted from the lands granted to him. The defendant availing himself of a defence purely equitable, is in the same situation as he would have been in an action to reform the deed so as to vest in him the legal title to that to which he is in equity entitled, and asking equity must do equity. He can no more insist upon strict technical rules than can the plaintiff upon his purely legal title. The history of the title is very brief and fully explains the difficulty between the litigants. The nominal title to both parcels of land was, prior to 1849, in the plaintiff, but his father was the equitable owner of the western parcel, that now owned by the plaintiff, including the mill then standing and the mill-pond. After the death *Page 436 
of his father, the plaintiff undertook to convey to his mother that to which his father was equitably entitled, and preparatory to such conveyance a survey was made, and from that survey the deed to Mrs. Hoppough was drawn. However accurate the actual survey may have been, it is very evident that the transcript from which the deed was made was not accurate; the distances were just doubled by a mistake in counting a half chain which was used, as a whole chain, and while the second line of the description, which is the one in dispute, is given in the deed as on one course and straight, and which cutting off and leaving on the east of the former and in the defendant's possession, a portion of the mill-pond, and of the swampy lands overflowed by the waters of the pond and necessary to a full head of water, the evidence is, that in making the survey that line was on two or more courses, and was run around and made to curve to the east in the course of the line, and at the south end was quite to the east, so as to follow and include the high-water mark of the pond. The deed to Mrs. Hoppough, if corrected only as to the boundary lines specifically given, and by courses and distances, would give to the defendant a portion of the land covered by the mill-pond. But that would the inequitable and in direct conflict with the deed itself. The parties have in the same instrument declared the intent, and so described the premises intended to be conveyed, that the deed cannot be corrected so as to defeat that intent. Whatever mistakes may have been made, either by surveyor or scrivener, a court of equity cannot reform or correct the deed, and the description of the premises, except in conformity with this declaration of intent making a part of the same instrument. The parties say that the intent is to "convey that part of lot number forty-four, flowed by the waters of the mill-pond at high-water mark, and all other lands, etc." At the time the defendants purchased, the water of the mill-pond did flow to the east of the line now asserted by the defendant, and of the fence claimed as the line. In his contract of purchase there is excepted the land "now covered with the waters of the *Page 437 
mill-pond as conveyed by" the plaintiff to Margery Hoppough by deed bearing date the 1st day of March, 1849, only thirty days before the making of the contract. The deed executed in pursuance of the contract, in December thereafter, excepts "about four acres from the west end of said lot as conveyed to Margery Hoppough by deed" (describing it by its date and record), reference being had to said deed will more fully appear. The land and pond were used and kept up by the plaintiff until 1861. The defendant did not purchase the premises upon the faith of any representation that the fence was the dividing line between the two parcels of land. It was not pointed out to him as constituting the line until after the contract, and then the high-water mark of the mill-pond was visible, and he had bought expressly excepting the lands covered by it, and to high-water mark. The referee has not found an estoppel in pais against the plaintiff, and could not have done so upon the evidence. Under these circumstances there was, and could be, no practical location of the division fence which would exclude Mrs. Hoppough or the plaintiff from the lands then covered by the mill-pond at high-water mark, or vest the title of lands so covered and used in the defendant. The referee has not found, and does not base his judgment upon a practical location of the line. If the fence be regarded, as the referee says in his opinion, "substantially" on the dividing line, it was subject to the rights of the plaintiff to the small patches on the east of the fence flowed by the water of the pond, and was so understood by the parties. The referee should, upon the evidence, have found the mistake and adjudged the rights of each, and given a judgment which would have secured to the defendant the principle portions of the lands claimed by the plaintiff in his complaint, and at the same time given the plaintiff the benefit of the exception of lands covered by the mill-pond as it was at the date of the deed to Mrs. Hoppough. His error was in treating the defence as legal and adjudging that the defendant had a legal title to all the lands in dispute, upon his conclusions of law not sustained by his findings or warranted by the evidence. *Page 438 
He should, in view of the equitable defence, have adjusted the equitable rights of both parties. As it is, the defendant has a judgment for more than he is entitled to, and it cannot stand. From 1849, when the defendant became the owner, until 1861, the plaintiff occupied the land to the east of the fence by flowing it, and there was no practical location of a dividing line which could destroy his right. The conclusions of law and the judgment of the referee are not warranted by the facts found by him or proved upon the trial.
The judgment must be reversed and a new trial granted, unless defendant consents to modify the judgment so as to give plaintiff the land covered by the mill-pond at high-water mark.
All concur.
Judgment accordingly.