JOHN GLACKEN, RESPONDENT, *v.* JAMES BROWN, APPELLANT.

*Mistake in the description of land intended to be conveyed — when the equitable rights of a party may be asserted in an action of ejectment — when it is not necessary to first have the deed reformed.*

The defendant signed and delivered to a railroad company a written agreement by which he agreed to buy two lots, lying side by side, for the sum of $1,725. The company accepted the instrument and intended to carry out the agreement, but did not sign it. Thereafter the defendant orally agreed with the plaintiff to sell to him the westerly one of the two lots for the sum of $800, the plaintiff to pay that sum to the company and receive his deed from it. Thereafter the company, at the request of the defendant, delivered a deed of the westerly lot to the plaintiff on the receipt of $800, and one to the defendant of the easterly lot on receipt of $925. The parties entered into possession of the lots and built a fence upon the line as fixed by their oral agreement. Subsequently it appeared that by an error in the deeds executed by the company, the division line had been so located as to convey more land to the plaintiff and less land to

the defendant than was intended. The defendant did not notice the mistake when he received his deed, and the plaintiff either did not notice it, or else was silent with respect to it.

In this action of ejectment, brought to recover the possession of this strip of land from the defendant, the court directed the jury to find a verdict for the plain tiff, holding that even if the facts were as stated they constituted no defense. *Held*, that this was error.

That although the legal title to the strip was vested in the plaintiff, yet the defendant was equitably entitled to be relieved from the effect of the mistake, and to be placed in the same position as it was intended that he should occupy· under the oral agreement made with the plaintiff

That it was not necessary to reform the deeds in order to do justice between the parties.

That the same state of facts which would entitle the defendant to a reformation of the deed would establish his equitable right to the possession of the land, and would as effectually defeat an action of ejectment as would the legal title.

That the case should be determined upon much the same principles as would govern if the defendant had brought his action against the railroad company and the plaintiff to have the deeds reformed, so as to give to the purpose of the parties that effect, which, whether resting in parol or otherwise, they intended to accomplish by the deeds.

APPEAL from a judgment in favor of the plaintiff, entered on a verdict directed at the Montgomery Circuit, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

*W. B. Dunlap* and *N. C. Moak*, for the appellant.

*R. J. Sanson* and *J. E. Dewey*, for the respondent.

LANDON, J.:

The defendant negotiated with the New York, West Shore and Buffalo Railway Company for the purchase by him from the company of two lots lying side by side in the village of Port Jackson. He entered into a written contract with the company by the terms of which "he hereby agrees to buy and does buy" the same and agrees "to pay therefor $1,725, when a deed of said premises is duly executed and delivered to him" by the company, the deed to be delivered in thirty days from date, namely, May 2, 1882.

The defendant signed and delivered this agreement to the railroad company. · The company accepted the agreement and intended to carry it out on its part, but did not sign it. The evidence tended to

show that the defendant then orally agreed with the plaintiff to sell to him the westerly one of these two lots for the sum of $800, the deed thereof to be given him by the railroad company, and the plaintiff to pay to the company the $800. The defendant requested the company to execute such deed to the plaintiff. The railroad company thereupon executed and delivered to the defendant a deed of the easterly portion of the whole lot, and received from him $925, and also executed and delivered to the plaintiff a deed of the westerly portion thereof and received from him the balance of the purchase money, $800.

The defendant gave evidence upon the trial tending to show that by mistake the railroad company so located the division line between the two lots in the deeds to the respective parties, as to make the deed to the plaintiff embrace more land than the plaintiff and defendant had agreed should be conveyed to the plaintiff, and by the like mistake and as a consequence of it, less land was conveyed to the defendant than he had directed the company to convey to him. The evidence also tended to show that the defendant did not notice this mistake at the time he received his deed, and also tends to show that the plaintiff either did not notice it or was silent with respect to it.

The parties entered into possession of their respective lots and located and constructed a division fence between the same upon the line as originally intended between them, instead of upon the line mentioned in their respective deeds, and thus the defendant entered into possession of a narrow strip of which the plaintiff had the paper title from the railroad company. Plaintiff subsequently demanded possession of this strip, which, being refused, he brought this action in ejectment to recover possession thereof. The defendant answered setting forth the alleged mistake and claiming, as against the plaintiff the equitable title to the strip in question.

The trial court directed the jury to render a verdict for the plaintiff for the strip in dispute, and refused to submit to the jury any questions of fact arising upon the evidence, holding that if the facts were as defendant claimed, they would constitute no defense. The learned trial court assumed that because the contract of the defendant with the railroad company was unilateral, that is, that the defendant agreed to buy and the railroad company did not agree to

sell; therefore, the defendant did not acquire any interest in the whole parcel before the deed was given, and had no equitable title to any of it, and, therefore, when the railroad company gave the deed to the plaintiff, if it did convey too much, the excess conveyed was not the defendant's, and hence no actual interest of his was affected. This view would perhaps be conclusive if the court had power to deal only with the legal rights of the parties. But the real question here was not whether the defendant had, by a mistake of fact, lost legal title to the strip of land of which he was already the equitable owner, but, whether in attempting to execute contracts which should give effect to the mutual intention of the parties a mistake of fact had occurred, which so far defeated that intention as to result in vesting title to the strip of land in the plaintiff, which, but for the mistake, would have been vested in the defendant.

Assuming the facts to be as the testimony tended to establish them, the defendant had made two subsisting executory agreements, the first with the railroad company respecting an entire parcel of land, the second with the plaintiff, dependent upon the first, respecting a definite portion of the same entire parcel. These agreements were not enforceable by the defendant against either party, but all the parties were willing they should be executed, and they undertook respectively to do the acts necessary to their execution in fulfillment of their respective promises.

By the inadvertence of the railroad company, aided possibly by the negligence of the defendant, these contracts were so executed as to frustrate a substantial part of the intention of the parties and to pass title to the plaintiff of a strip of land which ought to have passed to the defendant.

Now, the plaintiff, upon the case stated, has the legal title to this strip, but he ought not to have it; he ought in good conscience to surrender the title to the defendant. The railroad company has no interest in the question; the case is strictly between the plaintiff and defendant.

It is no objection to the relief asked by the defendant that the agreements which the parties attempted to execute, they could not have been compelled to execute. (*De Peyster* v. *Hasbrouck*, 11 N. Y., 582; *Rider* v. *Powell*, 28 id., 310; *Wiswall* v. *Hall*, 3

Paige, 313; *Crippen* v. *Baumes*, 15 Hun, 141.) The defendant simply asks that the court relieve him from the prejudice to his title which a mistake of the parties has caused. This relief consits in placing the plaintiff and defendant in the same position with respect to each other that they meant to secure by the execution of their agreement.

It is not necessary to reform the deeds in order to do justice between the parties. Such reformation would require an action in which the railroad company should also be a party. Judgment in such action would no doubt furnish evidence decisive of this action, but the trial of this action would need meantime to be stayed. Such judgment, if favorable to this defendant, would give more formal, but not more efficient, expression to the defendant's title to the land in question than would be given in this action, if it should be adjudged that the plaintiff is not entitled to recover. Equity avoids circuity of action, and when justice requires it; regards as done what ought to have been done. The same state of facts which would entitle the defendant to a reformation of the deeds would establish his equitable right to the possession of the land, and as effectually defeat an action of ejectment as would the legal title. (*Hoppough* v. *Struble*, 60 N. Y., 430; *Crary* v. *Goodman*, 12 id., 266; Code of Civil Pro., § 507.)

The case should be determined upon much the same principles as would govern, if the defendant had brought his action against the railroad company, and the plaintiff, to have the deeds reformed, so as to give that effect to the intention of the parties, which, resting in parol or otherwise, they intended to consummate by the deeds. While the action is legal and the defense equitable, the method of trial is as if the action were wholly legal. (*Wisner* v. *Ocumpaugh*, 71 N. Y., 113.) We conclude, therefore, that the defendant was entitled to have submitted to the jury the questions of fact, arising upon the testimony in his behalf, substantially as he requested.

The judgment should be reversed and a new trial granted, with costs to abide the event.

LEARNED, P. J., concurred; BOOKES, J., not acting.

Judgment reversed, new trial granted, costs to abide event.