SUSQUEHANNA STEAMSHIP COMPANY, INC., Respondent, *v.* A. O. ANDERSEN & COMPANY, INC., Appellant.

Pleading — effect of counterclaim alleging mistake of parties in making of contract — evidence — when evidence tending to establish such counterclaim erroneously excluded — when legal and equitable defenses may be pleaded and tried together — when reformation of contract for mistake of parties or fraud of one should be granted.

1. This action is brought upon a contract made or alleged to have been made by the defendant and the owners of a steamship, who are plaintiffs assignors, whereby defendant, in consideration of an assignment of the charter party, promised as an original obligor to make payments of the hire. An examination of the terms of the contract as shown by letters passing between the parties clearly indicates an assumption by defendant of the obligations of the charterers.

2. Defendant alleges in his answer that the letter relied upon by plaintiff fails by mutual mistake of the parties or by mistake on the part of the defendant and fraud on the part of plaintiffs' assignor, to state the true agreement of the parties and that by reason of the premises the defendant is entitled to have the letter corrected so that it will express the true agreement of the parties. On the trial evidence on the part of defendant of conversations preceding and accompanying the signing of the contract was excluded on the ground that antecedent conversations were merged in the writings. *Held*, that the answer may fairly be considered as setting forth a counterclaim in addition to a defense if a counterclaim is necessary and is equivalent to a demand that the letter be corrected by the court accordingly.

3. If, however, the answer is viewed as a defense, it is sufficient A defendant may set forth as many defenses and counterclaims a

he has whether legal or equitable. (Civ. Pr. Act, § 262.) Under the head of equitable defenses are included all matters which would have authorized relief in chancery against a legal liability and which could not, at law, have been pleaded in bar. All that is necessary is that the equities when established be destructive of the plaintiff's right.

4. There is no distinction between kinds of defenses dependent upon their origin in equity or at law as to the manner of trial. The distinction is between defenses and counterclaims. (Civ. Pr. Act, § 424.) The rule is settled that equitable defenses are triable in the same way as defenses that are legal.

*Susquehanna St amship Co. v. Andersen & Co.,* 208 App. Div. 26, reversed.

(Argued December 10, 1924; decided January 21, 1925.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered March 5, 1924, affirming a judgment in favor of plaintiff entered upon a verdict.

*Herman S. Hertwig* and *John A. McManus* for appellant. The only reasonable construction of the letter of September twelfth, and the only possible construction giving effect to every word as written, is that it was an agreement to advance the Crotois charter hire to the plaintiff on the due dates as loans. (*Looney* v. *Hughes,* 26 N. Y. 514; *Allen* v. *Hudson,* 19 Barb. 442, 444; *Meyers* v. *McDonald,* 68 Cal. 162; *Fowler* v. *Hoffman,* 31 Mich. 216; *Foster* v. *Pettibone,* 7 N. Y. 433; *Ward* v. *Whitney,* 8 N. Y. 442; *Poel* v. *B. B. C. Co.,* 216 N. Y. 310; *Simon* v. *Etgen,* 213 N. Y. 589.) If the courts below deemed the letter capable of the construction they have given to it, then it would be at most an ambiguous document and the court erred in rejecting evidence of the surrounding circumstances as aids to interpretation. (*Gillet* v. *Bank of America,* 160 N. Y. 549.) Under the trial court's holding as to the legal effect of the letter of September twelfth, the defendant's plea that the letter so construed failed through mutual mistake or mistake of defendant and fraud of the steamship company to express the true

intent of the parties was a proper plea, and the court erred in refusing to entertain it. (*Bartlett* v. *Judd*, 21 N. Y. 200; *B. H. Ry. Co.* v. *B. C. Ry. Co.*, 151 App. Div. 465; *Nat. G. & M. Co.* v. *MacCormick*, 121 App. Div. 569; *Sullivan* v. *Traders' Ins. Co.*, 169 N. Y. 213; *Bennett* v. *Edison El. Ill. Co.*, 18 App. Div. 410; *Despard* v. *Walbridge*, 15 N. Y. 374; *N. Y. Central Ins. Co.* v. *Nat. Protection Ins. Co.*, 14 N. Y. 85; *Seeley* v. *Engel*, 13 N. Y. 542.)

*Nathan L. Miller* and *Alvin C. Cass* for respondent. The prior conversations were merged in the written agreement and parol evidence was not admissible to vary or contradict it. (*Eighmie* v. *Taylor*, 98 N. Y. 288; *Kennedy* v. *Porter*, 109 N. Y. 526; *Englehorn* v. *Reitlinger*, 122 N. Y. 76; *Thomas* v. *Scutt*, 127 N. Y. 133; *McShane Co.* v. *Padian*, 142 N. Y. 207; *Trustees of Southampton* v. *Jessup*, 173 N. Y. 84; *Murdock* v. *Gold*, 193 N. Y. 369; *Ocheo Realty Corp.* v. *Sev Realty Corp.*, 205 App. Div. 324.) No error was committed by the trial court in excluding evidence in support of the appellant's claim of mutual mistake, which was not well made. (*Corn* v. *Levy*, 97 App. Div. 48; *Stroock Plush Co.* v. *Talcott*, 129 App. Div. 14; *Syenite Trap Rock Co.* v. *Williams*, 167 App. Div. 755; 222 N. Y. 669; *Ocheo Realty Corp.* v. *Sev Realty Corp.*, 205 App. Div. 324; *Ward* v. *Union Trust Co.*, 166 App. Div. 762; *City of New York* v. *Matthews*, 156 App. Div. 490; *Independent Trading Co.* v. *Fougera & Co.*, 192 App. Div. 686; *Born* v. *Schrenkheisen*, 110 N. Y. 55; *House* v. *Walch*, 144 N. Y. 418.)

CARDOZO, J. Plaintiff's assignor chartered the steamship *Lydia* to one Crotois for a term of about six months, beginning September 28, 1919, at a monthly hire of $59,380 payable in advance. This action is brought upon a contract made or alleged to have been made by the defendant and the owner of the steamship whereby

[239 N. Y. 285] Opinion, per Cardozo, J. [Jan.,

defendant in consideration of an assignment of the charter party promised, as an original obligor, to make payment of the hire. A balance of $167,446.10 due at the commencement of the action was reduced by allowances and setoffs to $11,000, for which amount with costs a judgment has been recovered.

The contract between the owner and the defendant is embodied in two letters.

On September 12, 1919, defendant wrote to the Lydia Steamship Company, plaintiff's assignor, as follows:

" Referring to charter party for the steamer ' Lydia,' between yourselves as owners and J. E. Crotois, as charterers, and in consideration of your assigning the hire on the same to us, we hereby agree to pay to you on account of said hire on Thursday, the 18th of September, 1919 ($50,000) Fifty Thousand Dollars, and the balance of the two first months hire on arrival of steamer in Newport News in condition to load coal. Further hire monthly in advance at rate mentioned charter party.

" It is understood that in case the amount advanced by us should exceed money due by charterers, you will refund same. Yours very truly,

" A. O. ANDERSEN & CO., INC.
" V. Reinmann,
" *Vice Pres. & Gen'l Manager.*

" P. S. It is further agreed that we will pay the balance of the first two months hire on delivery in New York, instead of arrival of steamer in Newport News, if required by you. V. R."

The following was the reply: " *Sept.* 12, 1919.

" A. O. Andersen & Co., Inc.,
" 50 Broad St.,
" New York City:

" Gentlemen.— Referring to your today's letter, we hereby agree to the condition mentioned in same, and assign the hire as due under charter party, between

ourselves and Mr. J. E. Crotois, to yourselves, and compensation of the payment as mentioned in your letter, subject to refund if not due under charter party.

" Yours very truly,

" LYDIA STEAMSHIP CORP.,

*Sec'y & Treas.*"

" VR:LR

The defendant insists that this contract is misinterpreted when it is read as an assumption by the defendant of the obligations of the charterer. In the defendant's view, it is simply a promise to accommodate the owner by advancing the monthly hire, subject to a promise by the owner to refund the deficiency if, upon recourse by the defendant to the charterer, collection and reimbursement shall be found to be impossible. We agree with the courts below that if this was the meaning, there is no expression of it in the writing. The owner's promise is to refund if the advances are in excess of what the charterer shall owe. The defendant would have us transform this into a promise to refund if the advances are in excess of what the charterer can pay. That would be to remake the contract rather than construe it. The words are not without an office and a value when their natural meaning is ascribed to them. Wind and weather made it impossible to know in advance just when the charter party would end. The vessel might return before the end of the month, or she might be delayed; there might be " overlap " or " underlap." If the return was earlier than expected, the payment in advance would be in excess of what was due. Under the contract as written this excess would be refunded.'

The question remains whether error was committed in excluding evidence of mistake. The defendant alleges in its answer " for a sixth separate defense " that by the true agreement between the parties it was to be reimbursed by the owner for any advances not collected from

the charterer; that " the letter as signed as aforesaid fails by mutual mistake of the parties, or by mistake on the part of the defendant and fraud on the part of the Lydia Steamship Company, Inc., to state the true agreement of the parties as alleged in the foregoing paragraph, if its legal effect is, as claimed in the amended complaint, to impose on this defendant an absolute obligation to pay the plaintiff the said Crotois charter hire; " and that " by reason of the premises, the defendant is entitled, if the legal effect of said letter of September 12, 1919, is as alleged by the plaintiff, to have the said letter corrected so that it will express the true agreement of the parties as aforesaid." Judgment is demanded dismissing the complaint and for " such other and further relief in the premises as to the court may seem just." On the trial the defendant attempted to prove the conversations preceding and accompanying the signing of the contract. The trial judge excluded the evidence upon the ground that antecedent conversations were merged in the writings. Defendant's counsel then reminded the court that there was " a claim here for reformation," and that the evidence was " admissible under that defense if under no other." The ruling was not changed. Some point having been made that there should have been " a counterclaim in equity," defendant's counsel asked that if there was any objection to the form of the plea of reformation, the plaintiff be directed to state it to the end that the defendant might have an opportunity to amend. The direction was not given.

We think the defendant's answer may fairly be construed as setting forth a counterclaim in addition to a defense, if a counterclaim be necessary. The statement that " the defendant is entitled to have the said letter corrected so that it will express the true agreement " is equivalent to a demand that it be corrected by the court accordingly. True, the description of a counterclaim as a defense has been held to dispense with the need of a

reply, since otherwise a pleader by his own misdescription might set a trap for his adversary (*Acer* v. *Hotchkiss*, 97 N. Y. 395, 408, 409; *Equit. Life Assurance Society* v. *Cuyler*, 75 N. Y. 511; *Bates* v. *Rosekrans*, 37 N. Y. 409, 412). To obviate such dangers, the plaintiff must have the benefit of any denials or defenses that a reply could have stated. When that is done and the stage of trial is reached without previous motion challenging the pleading, an answer may be read in accordance with its substance rather than the label of its headings (*Acer* v. *Hotchkiss, supra; Nat. Gum & Mica Co.* v. *MacCormack*, 124 App. Div. 569).

In the determination of the case before us, we rest our judgment upon a broader ground, since there is room for the contention that the defendant stood upon the defense and made no point that its answer was to be read as something else. The question is fairly here whether the facts establishing the need for reformation, even if not stated as a counterclaim, make out an equitable defense. The plaintiff produces a writing which in form is a contract and asks the judgment of the court that it be enforced according to its terms. The defendant answers that enforcement is inequitable because fraud or mutual mistake has brought about the result that the writing is not a true expression of the meaning of the parties. This is good as a bar, and does not cease to be good because the defendant, if it had so chosen, might have asked for something more. There is no dearth of subtle discussion as to the effect of mistake in advance of reformation (Cook, Equitable Defenses, 32 Yale Law Journal, 645; Pomeroy, Remedies and Remedial Rights, § 87 *et seq.;* Hinton, Equitable Defenses under Modern Codes, 18 Mich. L. R. 717). Much of it is an echo of precedents and distinctions formulated in an era when there was no such thing as an equitable defense in a trial at common law. Now, " a defendant may set forth in his answer as many defenses and counterclaims, or both,

as he has whether they are such as were formerly denominated legal or equitable" (Civ. Prac. Act, § 262; Code Civ. Pro. § 507; Code of Procedure, § 150). A discussion of equal subtlety has centred upon the distinction between equitable defenses and equitable counterclaims. We have no need at this time to retrace and follow its refinements. They have been made irrelevant or largely so for the courts of this State by a series of early decisions which placed our law of pleading, in this respect at least, upon a broad and simple basis. With us, the rule is that "under the head of equitable defenses are included all matters which would have before authorized an application to a Court of Chancery for relief against a legal liability, but which at law could not have been pleaded in bar" (*Mandeville* v. *Reynolds,* 68 N. Y. 528, 545; *Dobson* v. *Pearce,* 12 N. Y. 156). The application of this test makes it immaterial that in the absence of judicial declaration of the existence of the defendant's equities, a legal liability would exist. The judicial declaration may be had as an incident to the litigation of a defense with the same effect as if incidental to the litigation of a counterclaim. All that is necessary is that the equities when established be destructive of the plaintiff's right. There are repeated restatements of the rule and illustrations of its meaning. *Crary* v. *Goodman* (1855, 12 N. Y. 266) was an action of ejectment. Plaintiff claimed the legal title. Defendant said in defense that the property in dispute was by mistake omitted from his deed. We held the answer good as an equitable defense. There was the same situation, followed by the same ruling in *Hoppough* v. *Struble* (1875, 60 N. Y. 430). We said (p. 434) that a decree of reformation, though proper, was not necessary. "The same state of facts which would entitle the defendant to a reformation of the deed would establish his equitable right to the possession, and would as effectually defeat the action as would the legal title" Other cases, both earlier and later,

announce a like conclusion in situations similar in substance though varying in details. We may instance *Haire* v. *Baker* (5 N. Y. 357), where we said that in an action to recover damages for the breach of a covenant against incumbrances, defendant might show by way of defense that by mistake the incumbrance complained of was omitted from an exception; *Pitcher* v. *Hennessey* (48 N. Y. 415), where upon an answer, which, like this one, was a cross between a counterclaim and a defense, we said (p. 422) that the equitable defense " should have been tried and determined by the court," though the action was at law; *Cavalli* v. *Allen* (57 N. Y. 508), where upon pleadings much the same we reached the same conclusion; *Mandeville* v. *Reynolds* (68 N. Y. 528, 543, 545), where in an action on a judgment the defendant showed in defense that there was fraud in its procurement; and *Young* v. *Overbaugh* (145 N. Y. 158), where the legal title was overcome by a defense of a parol gift, followed by possession and improvements. To this list may be added *Lamont* v. *Cheshire* (65 N. Y. 30); *Chase* v. *Peck* (21 N. Y. 581, 586); *Glacken* v. *Brown* (39 Hun, 294, 298); *Madison* v. *Benedict* (73 App. Div. 112); *Page* v. *Higgins* (150 Mass. 27, 28); *Eustis Mfg. Co.* v. *Saco Brick Co.* (198 Mass. 212, 217), and *Lowenthal* v. *Haines* (160 App. Div. 503). There is, indeed, a dictum in *Born* v. *Schrenkheisen* (110 N. Y. 55, 60) that mistake, though of such a nature as to justify reformation, does not help a defendant sued at law unless it is pleaded as a counterclaim. What was said, if more than dictum, was at all events not essential to the decision, for the case went off upon the ground that the defect of pleading was unimportant because disregarded by the parties. We find a return in later cases to the earlier and simpler view (*Walker* v. *Am. Central Ins. Co.*, 143 N. Y. 167; *Bennett* v. *Edison Electric Il. Co.*, 18 App. Div. 410; 164 N. Y. 131; cf. *City of N. Y.* v. *Matthews*, 213 N. Y. 563). Cases to the contrary may be found in the Appel-

late Division (see, *e. g., Ward* v. *Union Trust Co.,* 166 App. Div. 762), but they go back to *Born* v. *Schrenkheisen* (*supra*) for whatever authority supports them. To hold that mistake, though adequate for reformation, is never the basis for relief unless pleaded as a cause of action or a counterclaim would lead, indeed, to unexpected consequences of circuity and hardship. A plaintiff would then be helpless if the defendant were to plead a release or an accord and satisfaction which through some scrivener's mistake had been stated so broadly as to include his cause of action. The bar would stand unless the complaint was amended so as to change the nature of the suit. New matter in an answer is deemed, it is true, to have been controverted by traverse or avoidance (Civ. Prac. Act, § 243; Code Civ. Pro. § 522), but mistake is not a ground of traverse, and unless sufficient as a defense may not be ranked as an avoidance. Our decision in *Kirchner* v. *New Home Sewing Machine Co.* (135 N. Y. 182, 189) shows that the remedies available to suitors have not been circumscribed so narrowly. We think the principle that underlies our law of equitable defenses was stated long ago with precision and discernment. " The question now is, ought the plaintiff to recover; and anything which he shows that he ought not is available to the defendant, whether it was formerly of equitable or legal cognizance " (*Dobson* v. *Pearce,* 12 N. Y. 156, 168; *Mandeville* v. *Reynolds, supra*). The whole body of principles, whether of law or of equity, bearing on the case, becomes the reservoir to be drawn upon by the court in enlightening its judgment (*N. Y. Central Ins. Co.* v. *Nat. Protective Ins. Co.,* 14 N. Y. 85, 90, 91).

There remains for consideration the manner of the trial. Our statute provides that in an action for money only, " an issue of fact must be tried by a jury unless a jury trial is waived or a reference is directed " (Civ. Prac. Act, § 425; Code Civ. Pro. § 968). An issue of

fact arises upon a denial in the answer, or upon " a material allegation of new matter," constituting a defense (Civ. Prac. Act, § 422; Code Civ. Pro. § 964; Code of Procedure, § 253 *et seq.*).   There is no distinction in this respect between kinds of defenses, dependent upon their origin in equity or at law.   The distinction is between all defenses on the one side and counterclaims on the other (Civ. Prac. Act, § 424; Code Civ. Pro. § 974).   The rule is settled under these provisions that equitable defenses are triable in the same way as defenses that are legal (*Southard* v. *Curley,* 134 N. Y. 148; *Kirchner* v. *N. H. S. M. Co., supra; Bennett* v. *Ed. El. Il. Co., supra; Dobson* v. *Pearce, supra;* cf. *Stockbridge Iron Co.* v. *Hudson Iron Co.,* 107 Mass. 290; Cook, *supra;* Hinton, *supra*). Possibly, though this is far from clear, a different construction might have been given to the statute in its beginnings. The question was one not of constitutional privilege, but of the meaning of legislation.   The Federal courts have found it possible in construing the provisions of the Judicial Code to reserve to the judge the trial of equitable defenses while leaving the legal issues to the verdict of the jury (*Plews* v. *Burrage,* 274 Fed. Rep. 881; *Susquehanna Coal Co.* v. *Pratt & Young,* 276 Fed. Rep. 919, 920; *Union Pac. R. Co.* v. *Syas,* 246 Fed. Rep. 561; cf. *Liberty Oil Co.* v. *Condon Nat. Bank,* 260 U. S. 235, 242; *Nat. Aniline & C. Co.* v. *Arnhold,* 298 Fed. Rep. 755; *Lestrade* v. *Barth,* 19 Cal. 671).   Those provisions, however, when they are compared with the provisions of our statute, will be seen to be essentially different, though to some extent analogous.   We are committed to another holding, not only by the reported precedents, but by the consistent practice of trial judges extending over many years.   A familiar illustration is the defense of fraud in the inducement, as distinguished from fraud in the factum of a conveyance (*Whipple* v. *Brown Bros. Co.,* 225 N. Y. 237, 241, 243), a defense which though equitable in origin and history (*Jackson* v. *Hills,* 8 Cow. 290), is

submitted almost daily along with legal issues for the verdict of a jury. We have held that even the label of a counterclaim will not change the mode of trial at the instance of a defendant if what is described as a counterclaim is also a defense (*Bennett* v. *Ed. El. Il. Co., supra;* Civ. Prac. Act, § 424; Code Civ. Pro. § 974), unless the situation is one in which affirmative relief through a formal judgment of reformation is essential for complete protection (*Walker* v. *Am. Central Ins. Co.,* supra). That situation may arise where an instrument is capable of being used thereafter to the prejudice of the signer, for the verdict of a jury, if the possibility exists that it has been based on more grounds than one, is an uncertain basis for a plea of *res adjudicata.* In the absence, however, of a counterclaim, all defenses, legal and equitable, stand upon a parity. The process of assimilation has been made easier by the growth of the action for money had and received which has accustomed us to the solution of problems essentially equitable through the medium of juries. Very likely there is danger of confusion and injustice at times in this blending of the issues. Juries may find it difficult to apply the presumption that preliminary treaties are merged in the written contract if they are permitted to consider such treaties as evidence of mistake. Against these and like dangers, there are two methods of relief. One is suggested by the provision of the statute that " the court in its discretion may order one or more issues to be separately tried prior to any trial of the other issues in the case " (Civ. Prac. Act, § 443, subd. 3). The other is to be found in a strict enforcement of the rule that reformation must be refused unless the case in support of it is " of the clearest and most satisfactory character " (*Philippine Sugar Est. Dev. Co.* v. *Phil. Islands,* 247 U. S. 385, 391; *Christopher & Tenth St. R. Co.* v. *23d St. R. Co.,* 149 N. Y. 51, 58). This rule is as applicable to equitable defenses as it is to independent suits (*Hoppough* v. *Struble,* 60 N. Y. 430,

435).  Judgments for reformation have been reversed even in this court for failure to obey it.  We have withheld approval from such judgments when the evidence of mistake, though not lacking altogether, was too contradictory or uncertain to measure up to the prescribed standard (*Allison Bros. Co.* v. *Allison,* 144 N. Y. 21, 31, 33; *Nevius* v. *Dunlap,* 33 N. Y. 676, 680).  The judge must still be satisfied that this standard has been reached.

The plaintiff argues that the defense is foredoomed to failure, and that any error in excluding evidence to support it is too technical and unsubstantial to lead to a reversal.  We cannot say that this is so.  There is some suggestion that the defendant's letter as it stands is a departure from an earlier letter written by the defendant's representative, who is said to have been hampered by an imperfect knowledge of the language.  Even if he should be shown, however, to have written it himself, the right to reformation would not be lost if the true agreement of the parties was imperfectly expressed (*Pitcher* v. *Hennessey, supra,* at p. 424).  These matters are for the trial.  We may assume that the defendant will have no easy task in making proof of its defense. We are not at liberty for that reason to bar it from its day in court.

There are other questions in the case, but they were properly disposed of in the courts below.

The judgment of the Appellate Division and that of the Trial Term should be reversed, and a new trial granted, with costs to abide the event.

Pound, Crane and Lehman, JJ., concur; Hiscock, Ch. J., McLaughlin and Andrews, JJ., dissent.

Judgments reversed, etc.