VICTOR JACOBY, Plaintiff, *v.* HENRY S. DUNCAN, Defendant.

Supreme Court, New York County, January 3, 1931.

*Alfred B. Nathan* and *S. Howard Imbrey* [*Alfred B. Nathan* and *Benjamin Lipshitz* of counsel], for the plaintiff.

*Dorff & Levy*, for the defendant.

FRANKENTHALER, J. The theory of the plaintiff's cause of action is that upon his rescission of the contract between himself and Duncan Hotels, Inc., because of the defendant's alleged mis-

representations, he became entitled to recover from the *defendant* the consideration which he paid to Duncan Hotels, Inc.

It is well settled that an action for *rescission* will not lie against one not a party to the contract sought to be rescinded even where he had joined in the false representations. (*Alexander City Bank* v. *Equitable Trust Co.*, 223 App. Div. 24; *Nelvan Const. Corp.* v. *Sanka Realty Corp.*, 227 id. 51, at p. 52.) The fact that the present suit is predicated upon an informal rescission by the plaintiff's own act and does not seek a rescission by judicial decree furnishes no basis of distinction. The plaintiff must nevertheless look solely to the other party to the contract for the repayment of the consideration. The *Alexander City Bank Case* (*supra*) was, in fact, a " plain law action " (p. 25) for the return of the amount paid for certain bonds, and is, therefore, directly in point here. As Judge McAvoy, who wrote the opinion in that case, aptly said (p. 28): " In rescinding a contract and *enforcing rights growing out of such rescission*, one may only look to the other party to the contract." (Italics mine.) The situation would be different if this action were for fraud and deceit, in which event the defendant would be liable for any false representations made by him regardless of whether he was a party to the contract. (*Laska* v. *Harris*, 215 N. Y. 554.) No claim is, however, made that the action sounds in fraud or deceit. The complaint does not allege that the representations were known by the defendant to be false, *nor does the evidence warrant a finding to that effect.* Furthermore, the theory of damages adopted by the plaintiff is not that which would ordinarily govern an action in fraud and deceit. (*Reno* v. *Bull*, 226 N. Y. 546.) (See, also, *Nelvan Const. Corp.* v. *Sanka Realty Corp.*, *supra*.) The recent case of *Inman* v. *Credit Discount Corp.* (230 App. Div. 505) is clearly distinguishable. There the complaint joined a cause of action against the corporate defendant, based upon a rescission, with one *in fraud and deceit* against the individual defendants predicated upon *knowingly* false representations made by them. The case of *Lehman-Charley* v. *Bartlett* (135 App. Div. 674; affd., 202 N. Y. 524), relied upon in the prevailing opinion, was also one where a cause of action against the corporate defendant for the return of the price paid was joined with one against the individual defendants for fraud and deceit. Thus the court said (at p. 684): " The plaintiff being justified in rescinding the purchase of the stock was entitled to recover from the defendant corporation the money that he had paid. He was also entitled to recover from the individual defendants who were responsible for the circular any damage that he sustained in consequence of this *fraud.*" (Italics mine.) In *Mack* v. *Latta* (178 N. Y. 525), also cited in the majority opinion

in the *Inman Case* (*supra*), the Court of Appeals pointed out that (p. 529): " Upon the facts stated in the complaint plaintiff would be entitled to judgment against the individual defendants in an action at law for damages for their fraud." In all the authorities cited by the court in the opinion in *Mack* v. *Latta* (*supra*) a good cause of action in fraud and deceit was set forth, and they are, therefore, not applicable here.

As to the plaintiff's claim that the defendant and Duncan Hotels, Inc., may be treated as one and the same, it need only be observed that the defendant was not the only stockholder of the corporation. Even if he were, that would not justify an attempt to pierce the veil of the corporate entity, for no charge is made that the corporate form was resorted to in order to perpetrate a fraud. As pointed out by Professor Wormser in his volume on " The Disregard of Corporate Fiction and Allied Corporate Problems " (at pp. 83, 84): " Corporate entity will not be ignored at law or equity simply because the number of stockholders is few, or even one, unless the circumstances are such as would warrant the same disregard of the entity were there ten thousand shareholders * * *. The nearest approximation to generalization which the present state of the authorities would warrant is this: When the conception of corporate entity is employed to defraud creditors, to evade an existing obligation, to circumvent a statute, to achieve or perpetuate monopoly, or to protect knavery or crime, the courts will draw aside the web of entity, will regard the corporate company as an association of live, up-and-doing, men and women shareholders, and will do justice between real persons."

There appears to be no escape from the conclusion that the defendant is not liable to the plaintiff upon the cause of action asserted in the complaint. This is not a case of non-joinder of parties, which does not suffice to defeat an action (Civ. Prac. Act, § 192), but one of a suit against the wrong party, that is to say against one who is not properly a party at all. Indeed, it is improbable that jurisdiction could be obtained here of the proper defendant, Duncan Hotels, Inc., which is a Florida corporation, apparently not engaged in business in this State. The motion to dismiss the complaint must, therefore, be granted.

It remains to consider the counterclaim interposed by the defendant upon certain of the promissory notes given by the plaintiff to Duncan Hotels, Inc., in part payment of the purchase price, and indorsed and delivered by the latter to the defendant. As the defendant is obviously not a holder in due course, the plaintiff may set up any defense which he would possess as against the original payee. The only one of the five defenses contained in the

reply to the counterclaim which need be considered here is the fourth, which alleges that Duncan Hotels, Inc., agreed to deliver to the plaintiff a free and unincumbered title to the leasehold, that it failed to do so within a reasonable time despite demands by the plaintiff, and that the latter thereupon rescinded the agreement, restored the property and offered to account for the rents and profits received by him. Upon the basis of these allegations the plaintiff claims that the notes rightfully belong to him and that the counterclaim should be dismissed. By the terms of the agreement of December 1, 1925, Duncan Hotels, Inc., agreed to sell, transfer and assign to the plaintiff a ninety-nine-year leasehold upon certain hotel property in Florida, " free and unencumbered " except for a sublease to a restaurant and taxes. In his examination before trial the defendant admitted that the plaintiff was told that if any other incumbrance existed it would be cleared up and removed. On November 7, 1925, only a few weeks prior to the agreement, Duncan Hotels, Inc., had assigned the lease to Peoples Bank and Trust Company of St. Petersburg, Fla., as security for a loan of $15,000. That institution had the assignment recorded on the 22d day of December, 1925, and was the owner of record of the lease on the date title was closed under the agreement of December first. It was not until the latter part of June, 1926, that the plaintiff for the first time learned that record title to the lease was in the name of the bank. He immediately caused his attorney to notify Duncan Hotels, Inc., and the defendant of that fact and to demand repayment of the purchase price. Attempts to communicate with the defendant during the summer of 1926 failed by reason of his absence. Leeper, who was also an officer of the corporation, asked the plaintiff to wait until the defendant returned, promising that the latter would clear up the situation satisfactorily. Finally, in September, 1926, an attorney representing the plaintiff managed to see the defendant in New York city and obtained from him an assurance that he would straighten everything out. Several weeks later the same attorney and the plaintiff again visited the defendant. On this occasion the latter offered to make an adjustment by exchanging property owned by him in Washington, D. C., for the hotel, but this proposal was not satisfactory to the plaintiff. Despite repeated demands by the latter and his attorney the defendant did nothing to remedy the matter until finally the plaintiff surrendered the hotel on December sixth, as he had threatened he would do, obtaining an acknowledgment in writing by Duncan Hotels, Inc., of its receipt of the property from him. It was only then that the first attempt appears to have been made to give the plaintiff what his contract entitled him to receive. A

week later, on December 13, 1926, a reassignment of the lease to Duncan Hotels, Inc., was obtained from Peoples Bank and Trust Company by the former, and it was recorded on July 14, 1927. There is a conflict in the testimony as to whether the plaintiff knew of the hypothecation of the lease at the time of the closing of title. The court is satisfied that he did not know anything about that transaction until the abstract of title was received many months later. It is not clear that the plaintiff was *definitely* informed even *thereafter* and prior to the rescission that the loan had been repaid to the bank. In the court's view of the case it is, however, immaterial when the plaintiff for the first time learned that the lease had been hypothecated. This consideration may be of importance where the claim asserted is based upon a charge of misrepresentation. It in no way affects the plaintiff's absolute right to an assignment of the leasehold free and clear of any incumbrances. Until the bank had reassigned the lease to Duncan Hotels, Inc., the *legal* title thereto could not be conveyed to the plaintiff, and until the reassignment had been recorded the *record* of title could not be vested in him. At no time prior to the rescission did the plaintiff possess either the legal or the record title to the lease, and there was, therefore, a failure of consideration which justified his calling off the transaction and demanding the return of the purchase price after Duncan Hotels, Inc., had been given a reasonable amount of time to rectify matters and had failed to do so.

The defendant urges that the plaintiff waived his right to rescind by retaining the property with knowledge of " the alleged fraud." The fourth defense to the counterclaim is, however, based upon the theory of failure of consideration, and the evidence establishes that the delay of several months between the time of the discovery of the outstanding assignment and the rescission was due to the plaintiff's reliance upon the assurances of Leeper and the defendant that the matter would be straightened out. The claim of waiver is, therefore, without merit. Nor did the plaintiff relinquish his right to rescind by accepting at the closing a bond which indemnified him against claims or losses by reason of any defect of title. When he discovered that title to the leasehold was in another and that there had been a failure of consideration, he was not obliged to resort to the bond and forego such other remedies as would have been available had there been no bond.

As to the question of restoring Duncan Hotels, Inc., to *status quo*, the cash already received by it from the plaintiff is more than ample to satisfy the largest amount for which the plaintiff can be held accountable on the evidence presented. It follows that the

plaintiff is entitled to the return of the notes and that they may not be enforced by the defendant.

Before concluding it may be well to advert to the fact that, although the plaintiff restored physical possession of the hotel to Duncan Hotels, Inc., which acknowledged its receipt thereof, he has not actually reassigned to it the lease or the mortgage. (It should be noted that the lease is mortgaged to Duncan Hotels, Inc., as security for the payment of the notes and that legal title thereto is, therefore, in the latter without a reassignment.) Assuming that the failure to reassign the lease and mortgage would invalidate the plaintiff's attempt to rescind informally by self help, it would not deprive him of the right to a rescission by decree of a court of equity in a suit against *Duncan Hotels, Inc.*, upon proof of an *offer* to reassign and to restore to *status quo*. This, it is true, may not avail the plaintiff in connection with the cause of action *at law* set forth in his complaint, but the situation is otherwise in respect of his *defense* to the counterclaim. Equitable defenses may be asserted to a suit at law, and it is sufficient to defeat such an action that the facts established would entitle a defendant (here, the plaintiff) to a decree of a court of equity were he to invoke that forum. (*Susquehanna S. S. Co., Inc.*, v. *Andersen & Co., Inc.*, 239 N. Y. 285.) As Judge (now Chief Judge) CARDOZO well said (at p. 292): " ' Under the head of equitable defenses are included all matters which would have before authorized an application to a Court of Chancery for relief against a legal liability, but which at law could not have been pleaded in bar.' * * * The application of this test makes it immaterial that in the absence of judicial declaration of the existence of the defendant's equities, a legal liability would exist. The judicial declaration may be had as an incident to the litigation of a defense with the same effect as if incidental to the litigation of a counterclaim. All that is necessary is that the equities when established be destructive of the plaintiff's right." Although a *law* court may not direct the reassignment of the lease and mortgage, it may recognize the plaintiff's right to rescind and refuse to permit a recovery upon the counterclaim, leaving *Duncan Hotels, Inc.*, free to take appropriate steps to obtain a reassignment, at which time the plaintiff may choose to assert his right to recover the balance of the price, less any rents and profits for which he may be directed to account. The plaintiff's attitude before the institution of the action as well as since has been instinct with a willingness on his part to restore everything he received, and this is all that is necessary to establish an equitable defense to the counterclaim. No offer to restore or actual restoration may be made or required of the plaintiff *in this action*, as the

counterclaim on the notes is asserted by one who was not a party to the contract pursuant to which the notes were given, and who is, therefore, not entitled to the reassignment of the lease or mortgage.

In the light of the foregoing it is unnecessary to consider the various other grounds which the plaintiff urged in justification of his rescission, such as the existence of the indebtedness for the collection of which a mechanic's lien was filed, the failure to deliver an abstract of title or a title policy in accordance with the agreement, the alleged defects in the title to the mortgage transferred to the plaintiff and the non-payment of taxes.

In accordance with the stipulation entered into at the outset of the trial, the complaint and the counterclaim are both dismissed upon the merits. The motions to strike out, upon which decision was reserved, are denied, with appropriate exceptions.