CITIZENS FIRST NATIONAL BANK OF ˙FRANKFORT, Plaintiff, *v.* ROBERT A. PARKINSON, Defendant.

Supreme Court, Herkimer County, January 30, 1942.

*Winslow & Bennison,* for the plaintiff.

*Cosgrove, Harter, Scanlon & Wright,* for the defendant.

KIMBALL, J. This action was tried by the court without a jury upon stipulated facts. The plaintiff brings action against the defendant Parkinson, who was an accommodation maker and so known to be by the plaintiff. The note was secured by collateral belonging to, and deposited with, the plaintiff by the comaker, Davis. The note sued upon was the last of several renewals. A few days before the present note was due the defendant notified the plaintiff to the effect that he was unwilling to again sign it and that if the plaintiff was unwilling to accept the comaker's individual note, he, the defendant, demanded that the plaintiff immediately sell the collateral to pay the note. At that time the value of the collateral exceeded the amount due on the note.

Nothing was done by the plaintiff for some time, except to carry the note as past due. Nearly two years later the comaker died intestate and insolvent. No administration has been had upon his estate. Some fourteen months after the comaker's death the plaintiff commenced an action to foreclose a real estate mortgage given by the comaker as collateral, and about two years after the comaker's death the securities held by the plaintiff bank were sold. The combined amount realized from the foreclosure sale and the sale of the collateral was much less than the value of the real estate and the other collateral when the note became due. The plaintiff was authorized by the terms of the note to sell the collateral.

The plaintiff takes the position that the note must be paid by the defendant maker according to its terms. The defendant takes the position that the plaintiff, with knowledge that the defendant was merely a surety for the comaker, was bound to meet the demand of the defendant for the sale of the collateral at the time when it exceeded the amount due on the note, and having failed to act, the defendant is no longer liable. In other words, that although the defendant was primarily liable upon the note when it became due, he was entitled to have it paid by the sale of the collateral held by the bank and thus exonerate him from liability.

There is no question that even though the holder of the note knew defendant to be an accommodation party, the defendant was primarily liable upon the note as maker. (Neg. Inst. Law, §§ 3, 55.)

Any contract or agreement which, if made between defendant and plaintiff, by its terms purported to relieve the defendant from liability would be void. (*Bay Parkway Nat. Bank* v. *Shalom,* 270 N. Y. 172; *Mount Vernon Trust Co.* v. *Bergoff,* 272 id. 192.)

The question is presented, therefore, whether, although the defendant was primarily liable on the note when it became due, he may set up as a defense, under the facts here presented, the failure, omission or neglect of the plaintiff to comply with his demand to have the note paid out of ample collateral and thus relieve him.

The defendant may set up any defense, legal or equitable, which he may have in this action at law. (Civ. Prac. Act, § 262; *Susquehanna S. S. Co.* v. *Andersen & Co.*, 239 N. Y. 285.)

Were this case other than one arising out of a negotiable instrument, I would have no hesitancy in holding that the plaintiff owed a duty to the defendant to sell the collateral and thus extinguish the defendant's liability. In *Dibble* v. *Richardson* (171 N. Y. 131) the rule was stated: " When the facts show that two debtors, as between themselves, are principal and surety and this is known to the creditor, he is bound to respect the relation, even if by the terms of the security held by him, the real surety occupies the position of principal." (Citing *Grow* v. *Garlock*, 97 N. Y. 81.)

In *Pain* v. *Packard* (13 Johns. 174) the defendant was maker of the note and the holder knew him to be security only for Munson. Packard asked plaintiff to proceed against Munson who was then solvent. The plaintiff did not do so until Munson was insolvent. Speaking of the duty of the plaintiff, the court said: " He was, in law and equity, therefore, bound to use due diligence against the principal, in order to exonerate the surety."

In *King* v. *Baldwin* (17 Johns. 384) there was an appeal from the Chancellor's decision which recognized the rule in *Pain* v. *Packard* but which held that relief should have been asked by a bill in equity to compel the holder of the note to sue the surety. The Court of Errors held that it was not necessary to first appeal to a court of equity but that the surety might by notice require the holder to sue. In following the rule of *Pain* v. *Packard* the court said: " this has been treated as a novel and alarming doctrine; but, in my apprehension, it can not alarm an honest or conscientious creditor; for where is the man who will boldly avow the unjust and immoral principle, that after his debt has become due, and after he has been solicited by the surety to proceed and collect it, by prosecuting both principal and surety, he will abstain from suing, with a view of favouring the principal, and throwing the eventual loss on an innocent man, who, from motives of friendship or humanity, has become a surety."

The rule or doctrine enunciated in *Pain* v. *Packard* and *King* v. *Baldwin* has long been recognized. The question here is whether this doctrine has been abrogated, so far as it relates to the accommodation maker of a note, by the provisions of the Negotiable

Instruments Law. I do not find that the precise question, disclosed by the stipulated facts in this case, has been passed upon by the Court of Appeals. The case of *National Citizens' Bank* v. *Toplitz* (81 App. Div. 593; affd., on other grounds, 178 N. Y. 464) does not seem to answer the question. There the answer was that the time of payment was extended by the bank without the knowledge or consent of the defendant who was an accommodation maker. The Appellate Division held that the defendant was primarily liable and that " No other question of liability can arise in this case than such as appears upon the face of the instrument." The Court of Appeals. in affirming, did so on the ground that there was neither allegation nor statement of any consideration for the agreement to extend the time. Judge WERNER, in the opinion, specifically declined to agree or disagree with the Appellate Division. He said: " The question whether these sections of the statute referred to have made a change in the liability assumed by an accommodation maker of a promissory note, is an interesting one which we do not deem it necessary to discuss at this time, because we have reached the conclusion that the answer does not present a legal defense in any aspect of the case. * * * Prior to the enactment of the Negotiable Instruments Law it was the well settled rule in this State that a valid and binding agreement to extend the time of payment between the holder of a promissory note and the principal debtor, without the knowledge or consent of the surety, operated to release the latter, provided the holder knew of his true relation to the note. Whether that rule has been changed by the Negotiable Instruments Law is a question that will have to be decided when it is fairly presented."

Assuming that Parkinson, being primarily liable, may not avail himself of the benefits given a person secondarily liable under section 201 of the Negotiable Instruments Law, yet I see no reason why, although primarily liable under sections 3 and 55 of that law, he may not invoke the equitable doctrine of *Pain* v. *Packard*. I see no inconsistency in so holding. Parkinson was primarily liable for the face of the note when it became due according to the statute, but I think he may set up his defense in equity that the plaintiff with full knowledge of his true position as surety for Davis, failed in a duty owed to him upon his demand which duty, if performed, would have exonerated him from liability. To hold otherwise is contrary to equity, fair dealing and good morals.

I have examined the precedents cited by the parties. Some of them do not seem to me to be in point. I think that *Field* v. *Leavitt* (5 Jones & S. [N. Y.] 215) and *First Bank of Notasulga*

v. *Jones* (156 App. Div. 277), cited in *Syracuse Trust Co.* v. *Bondy* (250 id. 827), are distinguishable.

I believe the question here presented is still an open one and I prefer to follow the rule which seems to me to be just and equitable and to hold that the enactment of the Negotiable Instruments Law has not abrogated it. In support of my opinion attention is called to the decision in *Building & Engineering Co.* v. *Northern Bank* (206 N. Y. 400) which was not cited by counsel on either side. There it is stated that the Court of Appeals in *National Citizens' Bank* v. *Toplitz* (*supra*) refused to construe sections 3 and 55 of the Negotiable Instruments Law in a law action when the question was not fairly presented by the appeal. It was held that sections 3 and 55 were not intended to prevent courts from determining questions in equity. The opinion states: " If we assume that in an action at law the makers of the note must arbitrarily be treated as primarily liable thereon, and the plaintiff as secondarily liable thereon, it does not prevent the court in an action *in equity from determining and enforcing the rights of the parties as the same are found as a matter of fact.*" (Italics mine.)

It is my conclusion, therefore, that here the plaintiff, with knowledge of the true relation of the defendant to Davis, owed him a duty to comply with his demand; that the Negotiable Instruments Law has not changed the rule with respect to that duty; that had the duty been performed, the note would have been paid and the defendant's liability extinguished and that it follows that the plaintiff may not recover against the defendant. The judgment should be for the defendant. Findings may be submitted in accordance with this memorandum and settled upon five days' notice.