THE NEW YORK TRUST COMPANY, as Trustee under a Deed of Trust from GEORGE F. UNDERWOOD and JENNIE A., His Wife, Dated July 28, 1920, Respondent, *v.* AMERICAN REALTY COMPANY and Another, Appellants.

First Department, February 5, 1926.

Pleadings — counterclaims — action to recover principal of one promissory note and interest on others which were given in purchase of timber land — sufficiency of counterclaims based on alleged fraud by creator of trust of which plaintiff is trustee in purchasing land which one of defendant corporations contemplated purchasing — creator of trust was director of said corporations and had charge of timber land purchases — after creator of trust had purchased and transferred land to trustee principally for benefit of his family he, acting as agent of trustee and director of purchaser, negotiated sale — price paid was excessive — plaintiff is responsible for fraud of creator of trust acting as its agent — counterclaims arose out of transaction, within meaning of Civil Practice Act, § 266, in which notes were given — upon purchase of land by creator of trust he became trustee thereof for his corporation — plaintiff trustee acquired property subject to said trust in favor of corporation and held excess price as trustee for corporation — equitable cause of action may be interposed, under Civil Practice Act, § 262, as counterclaim to legal cause — alternative relief to make counterclaims definite and certain denied.

In an action to recover the principal and interest of one promissory note and the interest on other notes not due, which were given by one of defendant corporations for the purchase of timber land and guaranteed by the other defendant corporation, counterclaims interposed by the defendants are sufficient which alleged that the creator of a trust, which was effected principally for the benefit of his family, who was a director of the purchasing corporation and of the guarantor corporation, was in charge of purchasing timber land for said corporations; that said corporations contemplated the purchase of the timber land in question but before the purchase was made the creator of the trust purchased the lands and transferred them to the plaintiff trustee under the trust stated; that thereafter the creator of the trust acting as agent for the trustee and also as director for the corporations, negotiated the sale of the land to one of the corporation defendants at a price greatly in excess of its actual value and in violation of his relation to the purchaser as director.

The land in question was, as soon as it was purchased by the creator of the trust under the circumstances stated, impressed with a trust in favor of the corpora-

tion of which the creator was a director, and the title passed by him to the trustee was impressed with a like trust, and also the trustee held the money in excess of the actual value of the property as trustee for the purchasing corporation.

The counterclaims in question although based on tort arose out of the transaction in which the notes were given and were, therefore, under section 266 of the Civil Practice Act, properly pleaded as counterclaims in this action on the notes.

The plaintiff trustee having received the benefits of the sale is responsible for the acts of the creator of the trust who, it is alleged, acted as its agent in negotiating the sale to the defendant corporation.

The counterclaims, although sounding in equity, were properly pleaded in this action at law under section 262 of the Civil Practice Act which permits the pleading of counterclaims whether they are such as were formerly denominated legal or equitable.

The prayer by plaintiff for alternative relief requiring the defendants to make the counterclaims definite and certain must be denied, since the particulars asked for by the plaintiff are of such a nature as not to enter into the stating of the cause of action but come within the province of a bill of particulars.

APPEAL by the defendants, American Realty Company and another, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 10th day of August, 1925, granting plaintiff's motion for judgment on the pleadings.

*Stetson, Jennings & Russell* [*George A. Brownell* of counsel; *Theodore Kiendl* with him on the brief], for the appellants.

*Zabriskie, Sage, Gray & Todd* [*William E. Sims* of counsel; *Leonard P. Moore* with him on the brief], for the respondent.

FINCH, J.  The question presented for decision is whether the two counterclaims set up by the defendants herein in their amended answer are available as against the plaintiff, as trustee.

The complaint sets forth seven causes of action.  The first is for the principal and interest on an overdue note for $100,000 made by the defendant American Realty Company and payment thereof guaranteed by the defendant International Paper Company. The remaining causes of action are to recover interest upon six other promissory notes, the principal amount of which had not become due at the time of the commencement of the action.  All these notes were given in payment for certain timberlands purchased by the defendant American Realty Company from the plaintiff. The present answer contains certain denials and the two counterclaims in question.  The denials this court held, upon a prior appeal (213 App. Div. 272), did not raise any issues.  This court further held that the matter now set up by way of the two counterclaims, and then set up only by way of defense, was not available

27

as a defense, since the defendants had not elected to rescind the purchase and hence could not wholly defeat an action for the purchase price.    In addition it was said that under the circumstances in the case at bar a purchaser who himself had been induced by fraud to purchase, might rescind and tender back the land and thus have a defense, or elect to keep the land and pay and bring an action to recover the damages sustained; also that such purchaser, on being sued for the agreed price, might counterclaim for such damages as he had sustained by reason of the fraud.    Leave was given to serve an amended answer.    Pursuant thereto the defendants have served an amended answer, wherein are set up the two counterclaims, more fully hereinafter set forth, for damages alleged to have been sustained because of fraudulent representations made by one Underwood while acting as the plaintiff's agent, and also because of certain breaches of duty owing by said Underwood to the defendant corporations by virtue of his relation of officer and director in said corporations.    By the first counterclaim it is alleged that George F. Underwood, prior to his death, had been a director and member of the executive committee of the defendant International Paper Company and president and a director of the defendant American Realty Company; that the officers and directors of both companies relied on Underwood's judgment in the purchase of timberlands, and that he had charge of the matter of such purchases; that knowing the International Paper Company was considering the purchase of certain timberlands, Underwood bought up such lands and gratuitously conveyed them to the plaintiff herein in trust, to be sold as soon as possible after the conveyance; that the trust deed directed that certain small amounts of the purchase price be paid to certain charitable and other institutions, and that the bulk of the proceeds be applied to the benefit of the immediate family of the said Underwood, the largest beneficiary under said trust being the wife of said Underwood. It is then alleged that, pursuant to the aforesaid trust, the plaintiff sold the timberlands to the defendant American Realty Company through the said Underwood, acting as its agent.    In this connection the counterclaim alleges:  " The entire negotiations connected with the sale of this land were conducted by Underwood, and throughout the deal he acted both for the selling and buying parties.    It was by him that the offer of sale was made to the International Paper Company and its subsidiary, and throughout the negotiations he acted as sole agent for The New York Trust Company, Trustee. On the other hand it was largely through the representations and recommendations of the said Underwood, acting in his capacity of officer and director of the defendant companies with particular

charge of their timberland purchases as aforesaid, that the purchase by International Paper Company and American Realty Company was effected."

It is further alleged by the first counterclaim that the consideration paid by the defendants for the timberlands sold by the plaintiff through its agent Underwood " was greatly in excess of the fair value of the said lands and also greatly in excess of the amount paid by Underwood in acquiring them." It is then further alleged that " As a result of the breaches of trust on the part of George F. Underwood, performed while acting as agent for plaintiff The New York Trust Company, Trustee, referred to in the foregoing paragraphs XXIV to XXIX inclusive, defendants International Paper Company and American Realty Company have been damaged to the extent of $459,873.30, in addition to the damage and loss which will result if the said contract dated December 4, 1920, between George F. Underwood and International Paper Company is performed."

The second counterclaim repeats the allegations of the first counterclaim and alleges further that the concealment by Underwood from the defendants of the fact that he was making an indirect profit as a result of the sale of the timberlands, " together with the recommendations and representations of George F. Underwood that the purchase price to be paid of approximately $1,364,895 and the execution of the contract of December 4, 1920, between George F. Underwood and International Paper Company, was a fair and proper consideration to be paid for the said timberlands, were intended by Underwood to deceive and defraud defendants as to the price paid by him for the said timberlands and as to their actual value, and to induce defendants to purchase the said timberlands at the exorbitant price above stated."

It is further alleged that " the representations and recommendations of Underwood as to the value of the land were false, and his concealment of the amount of his indirect profit was fraudulent and a breach of his trust relationship to defendant companies, all of which Underwood well knew."

It thus appears that in addition to the allegations as to breaches of trust by Underwood the defendants expressly allege that the sale of the lands, in consideration of which the note in suit was given, was procured on behalf of the plaintiff by its agent Underwood. This being so, the plaintiff cannot, while seeking to enjoy the fruits of a contract secured by its agent, disclaim liability for the fraud practiced by its agent in securing the contract. As was said in *Krumm* v. *Beach* (96 N. Y. 398): " These averments of the answer show very clearly that the husband, in his negotiations

with plaintiff, assumed to act for his wife, and as her agent; that the plaintiff purchased of said Susannah and not merely of her husband; and that she so ratified his agency as to make the plaintiff's agreement with and representations to her husband a contract with her as well as with him, and which she pleads in her answer as entered into with both.

"* * * The case, therefore, is brought within the rule which makes her receipt and retention of the fruits and product of the fraud involve a liability on account of it, although herself innocent of personal participation in the wrong."

Also in *Bennett* v. *Judson* (21 N. Y. 238) Chief Judge Comstock said: "There is no evidence that the defendant authorized or knew of the alleged fraud committed by his agent Davis, in negotiating the exchange of lands. Nevertheless, he cannot enjoy the fruits of the bargain, without adopting all the instrumentalities employed by the agent in bringing it to a consummation. If an agent defrauds the person with whom he is dealing, the principal, not having authorized or participated in the wrong, may no doubt rescind, when he discovers the fraud, on the terms of making complete restitution. But so long as he retains the benefits of the dealing, he cannot claim immunity, on the ground that the fraud was committed by his agent and not by himself. This is elementary doctrine, and it disposes of one of the questions raised at the trial."

In so far, therefore, as the counterclaims allege fraudulent representations of the plaintiff's agent Underwood in effecting the sale of the lands for the plaintiff as seller, the counterclaims state a cause of action at law against the plaintiff, which counterclaims arose out of the transaction for which the note in suit was given, and hence may be set up as a counterclaim. (Civ. Prac. Act, § 266.)

Respondent urges that such a counterclaim in tort for false representations may not be set up because it is not within the language of the Civil Practice Act, which permits a counterclaim to be set up when it arises out of the contract or transaction set forth in the complaint or is connected with the subject of the action. It would seem, however, in the case at bar that a counterclaim for damages for false representations, which, the defendant alleges, were the means employed to bring about the contract which the plaintiff is seeking to enforce, would be a cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim and connected with the subject of the action. To say that the claim is on a promissory note and, therefore, that the promissory note is something distinct and apart from the contract of purchase would be to place impor-

tance more upon form than upon substance, particularly when it is impossible to see how injustice can result from allowing such a counterclaim to be set up, and where, by having the whole transaction disposed of in one suit, unnecessary litigation may be avoided. While another view has been taken (by a divided court, however) by those whose opinions carry great weight (*Vulcan Metals Co. v. Simmons Mfg. Co.*, 248 Fed. 853), yet it would seem that our State courts have held that such a counterclaim as in the case at bar may be set up. In *Siebrecht* v. *Siegel-Cooper Co.* (38 App. Div. 549) the action was brought to recover the purchase price of certain articles sold to the defendant by the plaintiffs' assignors. The answer by way of counterclaim alleged that the plaintiffs had entered into a conspiracy by which supplies were purchased of their firm at prices greatly in excess of their market value. It was held that the answer stated a counterclaim connected with the subject of the action within the meaning of section 501 of the Code of Civil Procedure (now Civ. Prac. Act, § 266). The court, by WOODWARD, J., said: " Can there be any doubt that the defendant's counterclaim is ' A cause of action arising out of the contract, or transaction, set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action? ' (Code Civ. Proc. § 501, subd. 1.)

" ' The word " connected," ' say the court in the case of *Carpenter* v. *Manhattan Life Ins. Co.* (93 N. Y. 552, 556), ' may have a broad signification. The connection may be slight or intimate, remote or near, and where the line shall be drawn it may be difficult sometimes to determine. The counterclaim must have such a relation to, and connection with, the subject of the action that it will be just and equitable that the controversy between the parties as to the matters alleged in the complaint and in the counterclaim should be settled in one action by one litigation; and that the claim of the one should be offset against, or applied upon, the claim of the other.' It is difficult to conceive of a state of facts where it would be more in accord with the principles of justice and equity to permit of a counterclaim than in the case at bar. One of the plaintiffs, while an employee of the defendant, enters into an arrangement with his father, the other plaintiff, to defraud the defendant. They afterward come into the ownership of the claim, a part of which was involved in the fraudulent transaction, and attempt to collect the same at law, refusing to acknowledge the rights of the defendant, thus compelling an action in tort if it is to have any remedy for the wrong. We are of opinion that the counterclaim of the defendant is so intimately ' connected with the subject

of the action,' that it would work a great wrong to the defendant to permit the demurrer to stand.''

While the above case might be considered as proceeding upon the theory that the defendant had waived the tort and was proceeding to hold the plaintiff upon a quasi contract for the return of the money fraudulently obtained, as money received for the use of the defendant, it could also have been sustained upon the theory that the defendant was counterclaiming for the damages for a tort. In *Laska* v. *Harris* (215 N. Y. 554) it appears that the action was brought for damages for a breach of a written contract for employment, the plaintiff claiming that he was wrongfully discharged by the defendant before the expiration of the period of employment specified in the contract. The answer pleaded that the plaintiff was discharged for cause and, as a defense and counterclaim, alleged that as a result of fraudulent representations by the plaintiff as to the amount of the assets of a third party, a company of which plaintiff was manager, the defendant was induced to purchase and did purchase the assets of said company, entered into a contract for the publication of the productions of said company, and incidentally into the contract employing the plaintiff, thus setting forth allegations appropriate to an action for damages for fraud and deceit. A unanimous Court of Appeals, by Seabury, J., there said: '' The cause of action alleged in the complaint was upon contract and the cause of action alleged in the counterclaim was in tort, but both causes of action arose out of the same transaction. The contract pleaded in the complaint was the result of the false and fraudulent representations upon which the counterclaim is based. If the counterclaim is established, it would defeat the plaintiff's claim. The counterclaim was properly pleaded. (Code of Civil Proc. sec. 501; *Isham* v. *Davidson*, 52 N. Y. 237; *Vandervort* v. *Mink*, 113 App. Div. 601; Pomeroy's Code Remedies, sec. 787.) ''

We come now to a consideration of the counterclaims in so far as they are predicated upon breaches of duty by Underwood in utilizing his knowledge acquired in a fiduciary capacity to purchase the lands in question and effect the sale thereof to the defendant American Realty Company at a secret profit. Upon the purchase by Underwood of the properties under the aforesaid circumstances, he acquired the same as trustee for the defendants. The rule applicable is clearly set forth in 14-A Corpus Juris, 116, as follows: '' Whether in any case an officer of a corporation is in duty bound to purchase property for the corporation, or to refrain from purchasing property for himself, depends upon whether the corporation has an interest, actual or in expectancy, in the property, or whether

the purchase of the property by the officer or director may hinder or defeat the plans and purposes of the corporation in carrying on or development of the legitimate business for which it was created. The rule that one may not purchase and hold as his own property which he is in duty bound to purchase for another applies to officers and directors of a corporation. Where they do so, they will be deemed to hold the title in trust for the corporation. They are liable to account for rents and profits, and are not entitled to reimbursement for improper expenditures." Also, in Cook on Corporations (8th ed. § 652) it is said: " Sometimes the director has purchased the property for the express purpose of selling it to the corporation. When such is the case the company may ratify and confirm the transaction, or it may keep the property and recover from the director the profit realized by him."

Said properties, therefore, passed to the plaintiff herein as agent for Underwood impressed with this trust in favor of the defendants. And when the plaintiff sold the property, as trustee of Underwood, to the defendant realty company at a price in excess of the price paid by Underwood in acquiring the same, the plaintiff received such excess as trustee for the defendants. There is thus set forth a good cause of action in equity. Such an equitable cause of action may be interposed as a counterclaim in an action at law under section 262 of the Civil Practice Act, which provides: " A defendant may set forth in his answer as many defenses or counterclaims, or both, as he has, whether they are such as were formerly denominated legal or equitable. * * *."

In *Susquehanna S. S. Co.* v. *Andersen & Co.* (239 N. Y. 285), although the cause was disposed of upon another ground, yet Judge CARDOZO, in writing for the court, assumed that such an equitable counterclaim may be set up in an action at law, when he said: " We think the defendant's answer may fairly be construed as setting forth a counterclaim in addition to a defense, if a counterclaim be necessary."

It, therefore, follows that the two counterclaims set forth valid counterclaims both at law and in equity, and are available as such in this action.

The plaintiff also prayed in the alternative that if the counterclaims be held valid, the defendants be required to make them more definite and certain. As to this prayer for relief, it is only necessary to say here that the particulars asked are of such a nature as not to enter into the stating of the cause of action, but come within the province of a bill of particulars.

It follows that the order appealed from should be reversed, with ten dollars costs and disbursements, and the motion denied,

with ten dollars costs, with leave to plaintiff to reply upon payment of all taxable costs to date.

CLARKE, P. J., DOWLING, McAVOY and MARTIN, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs, with leave to plaintiff to reply upon payment of all taxable costs to date.